RITCHIE v. BLUFF CITY LUMBER COMPANY.

Opinion delivered May 4, 1908.

1.  PAYMENTS—RECOVERY.—When a person, without mistake of fact or
    fraud, duress, coercion or extortion, pays money on a demand which
    is not enforceable against him, the payment is deemed voluntary, and
    cannot be recovered.  (Page 178.)

2.  SAME—CREDITS ON ACCOUNT.—Where there are mutual accounts be-
    tween two persons, credits upon one side are applied to the extin-
    guishment of debits on the other as payments intentionally made
    thereon.  (Page 178.)

Appeal from Jefferson Circuit Court; *Antonio B. Grace,* Judge; reversed.

This action was brought by the Bluff City Lumber Company against George W. Ritchie to recover money claimed to have been advanced by it to him.

The facts adduced by appellant are as follows: Prior to February 24, 1903, appellant was in the employ of appellee as a sales manager at a salary of $175.00 per month, and in addition had been loaned several thousand dollars by appellee without interest. On that day he tendered his resignation to John F. Rutherford, who was the vice-president, general manager and secretary of appellee. Rutherford desired him to remain with the company, and asked him to state upon what terms he would do so. After some discussion of the terms, appellant states that an agreement was entered into between the parties whereby he was to receive $3,000 per year and the use of $10,000 without interest, the contract to be in force for five years; that a memorandum of the contract was reduced to writing and signed by Rutherford for appellee and by himself. In addition, he says that the contract provided that certain obligations then due by him to appellee were to be cancelled, and that the written memorandum of the contract is now lost; that he entered upon the discharge of his duties under the contract, and that from that date until the institution of the present suit was paid at the rate of $3,800 per year.

During the trial, it was agreed between the parties that it is a fact that it was the custom of appellee, prior to the date to be made known by the evidence, that when employees were drawing in excess of $1,800 per year for their services, the books would only show a salary of $150 per month, and when an employee received more than that amount it was credited to him afterwards, and charged in the books to labor or expense. This was done to prevent any one from knowing what these employees were getting.

Mr. Robert York had this changed about September 1, 1906, so as to reflect the actual facts. The testimony also shows

that the books of the company show a mutual account of debits and credits between it and appellant. A credit of $150 per month was given appellant each month as salary and $2,000 additional credit was given him at the end of each year in the labor and expense account. The debit side of the account consisted of advances made from day to day to appellant.

Rutherford testified that he was representing appellee in making the contract, and that the terms of the agreement was that appellant was to receive two hundred and fifty dollars per month or three thousand dollars per year salary, and appellee was to let him have $10,000 without interest; that the contract was for five years, and that he thinks he signed a memorandum in writing to that effect; that he told Mr. York that he had made a proposition to appellant for $250 per month and the use of $10,000, and that York told him to make the deal for five years.

J. B. York, for appellee, testified that he was at the date of the contract, and is now, president of appellee company; that he was not present when Rutherford made the contract with appellee, but that it was talked over with him. The following is quoted from his testimony:

Q. "You talked about it (referring to a conversation with Rutherford)."

A. "I talked about it, or we did, and I remember very distinctly that he was to get $250 per month and $10,000 for five years, and he was to have the note returned to him (referring to a note owed by him to appellee), but was to pay the Bluff City Lumber Company interest, and it would not have been let out on no other terms."

Q. "Did you get the information then from Ritchie or Rutherford?'

A. "It was talked over together."

Robert York testified that he went with the company September 1, 1905, and soon after learned that appellant was getting $3,800 per year as salary; that he was looking through the accounts of appellant and others and found a credit of two thousand dollars, and that this credit was of date of the latter part of December or the first of January, 1906. "I told appellant that it would not be entered that way."

There was a verdict and judgment in favor of appellee in the sum of $2,549.25.

Appellant filed a motion for a new trial, and upon it being overruled perfected his appeal to this court.

*N. T. White* and *Ben J. Altheimer,* for appellant.

In the absence of fraud, duress, extortion or coercion, money voluntarily paid, even on an unjust or illegal demand, cannot be recovered. 72 Ark. 555; 73 Ark. 565; 22 Am. & Eng. Enc. of L., (2 Ed.), 609; 49 Ark. 70; 44 Am. St. Rep. 529; 33 Id. 686. There is no evidence of duress or extortion, and fraud will not be presumed, but must be proved. 17 Ark. 151; 9 Ark. 482; 11 Ark. 378; 33 Ark. 727; *Id.* 259; 25 Ark. 225; 31 Ark. 554.

*Austin & Danaher,* for appellee.

The doctrine of estoppel on the ground of voluntary payment cannot be invoked in this case. The money was never actually paid to appellant by any officer of the company. He was in charge of the books and, being indebted to the company, credited himself with these amounts, which credits were repudiated by the company as erroneous as soon as discovered.

HART, J., (after stating the facts). The rule is well settled that when a person, without mistake of fact or fraud, duress, coercion, or extortion, pays money on a demand which is not enforceable against him, the payment is deemed voluntary, and can not be recovered. *Larrimer* v. *Murphy,* 72 Ark. 555; *LaFayette* v. *Merchants' Bank,* 73 Ark. 565; *Vick* v. *Shinn,* 49 Ark. 70; 22 Am. & Eng. Enc. of Law, (2d Ed.), 609.

Appellant invokes the application of this doctrine in the present case as a ground for reversal. The undisputed testimony shows that appellant received certain advancements from time to time from appellee, and was credited with the sum of $3.800 per year, beginning from the date of the contract in controversy. There may be some grounds for dispute about the exact terms of the contract, but there is none in regard to the fact that the credits were placed upon the books of the company, and that with the knowledge of Rutherford, its secretary and general manager. It is claimed by appellee that the making of

the advancements and the placing of the credits to the account of appellant was not a payment, but we fail to perceive the reason or justness of this contention. Where there is an open account between two parties, in the absence of an agreement to the contrary, all items of the account become constituent parts thereof, and are applied in payment of the oldest item in the account on the other side, and he only is entitled to recover in whose favor the final balance upon the whole account is found. The rule is where there are mutual accounts, the credits on one side are applied to the extinguishment of debits on the other as payments intentionally made thereon.

For the reason that there is no evidence to show that the payments were not voluntarily made with the full knowledge of the facts, the cause is reversed and remanded for a new trial.