MᶜCRACKEN v. MᶜBEE.

Opinion delivered October 17, 1910.

1. CANCELLATION OF INSTRUMENTS—JURISDICTION.—The right to a cancellation of instruments is exclusively equitable, is often granted as ancillary and preliminary to the final relief by which a party's primary right, estate or interest is established or enforced, and is exercised to remove an obstacle which stands in the way of one's right, interest or estate. (Page 263.)

2. SAME—INSTRUMENTS VOID AT LAW.—The equitable relief of cancellation of instruments may be resorted to even in the case of instruments void at law except where the invalidity of the instrument is apparent on its face. (Page 263.)

3. EQUITY—JURISDICTION IN PROBATE MATTERS.—Equity has no jurisdiction over the settlement of a guardian while it is still pending in the probate court. (Page 264.)

4. CANCELLATION OF INSTRUMENTS—SUFFICIENCY OF EVIDENCE.—An executed conveyance will not be cancelled unless the ground for cancellation is established by evidence that is clear, unequivocal and decisive. (Page 264.)

5. WILLS—ELECTION.—Where a will leaves property to a devisee and at the same time undertakes to convey property belonging to him to another, the devisee is required to elect whether he will take under the will or reject the provision of the will and retain his property. (Page 266.)

6. WILL—REVOCATION OF ELECTION—RESTITUTION.—Where an infant heir elects not to take under his father's will, and asks that a settlement with his father's widow, made in pursuance of the provisions of such will, be set aside for fraud, he must offer to restore what he received under that will. (Page 267.)

Appeal from Marion Chancery Court; *T. Haden Humphreys,* Chancellor; reversed.

STATEMENT BY THE COURT.

In 1897 W. C. McBee died testate. He left a widow, appellant, and one child by her named Lucy, and six children by a former wife. Appellee, Victor B. R. McBee, was one of the children, and at the time of his father's death was 12 years of age. By the will appellant was given what was designated as the "home place," containing about 476 acres, and she was enjoined by the testator to give his minor children, including appellee, "a home," and to "see after them in sickness, to oversee their educational inter-

ests, to direct and guide them till they reach their majority, or as long as they will be governed by her and listen to her advice." He also gave to appellant certain articles of personal property, and then one half of all the residue of personal property to be selected by her before any of his debts were paid. Then, after the payment of his debts, his children were to share equally the real and personal property remaining. He had a life insurance policy for $6,000. The beneficiaries in the policy were appellee and two of appellee's sisters. The beneficiaries were to share equally in the policy. The will contained the following provision with reference to the life insurance:

"I also will that my life insurance be paid to my wife in twenty annual installments of $300 each. She is to have one-third of same and the other two-thirds to be equally divided and used in educating Maud A., Myrtle M., Victor, B. R. and Lucy McBee. till they reach their majority, or so long as they each wish to go to school; but after they quit going to school their parts are to revert severally to my wife."

Appellant and one A. S. Layton were named as executors. The will was duly probated, and appellant and Layton entered upon the administration of the estate. Appellant as executrix made final settlement November 7, 1904, which was, at the August term, 1905, of the probate court, duly approved and confirmed. This settlement shows that appellee's share of the estate, apportioned according to the provisions of the will, not including the unsold lands, was $1,778.21. Appellant was appointed guardian of appellee in 1898, and her final settlement as executrix shows that she credited herself as executrix with the above sum, and she passed same to her account as guardian. After her appointment as guardian, appellant surrendered the life insurance policy, and took in lieu thereof a bond with coupons attached, payable to appellee and his two minor sisters.

Appellee became of age February 20, 1905. On the 15th day of May, 1905, appellee executed to appellant deeds to his interest in the unsold lands of the estate in Arkansas and Texas, and at the same time and place he executed the following bill of sale:

"Know all men by these presents, that I, Victor B. McBee, formerly a son of W. C. McBee, deceased, and a brother of Lucy McBee, deceased, for and in consideration of the sum of twenty-two hundred dollars to me in hand paid by Winnifred M. McBee, the receipt of which is hereby acknowledged, do hereby bargain, sell and deliver to the said Winnifred M. McBee all and singular the following described personal property, towit: All the right, title and claim and estate which I have or may have either at law or in equity in and to all of the personal property of every kind belonging to the estate of W. C. McBee, deceased, and Lucy McBee, deceased. Such estate being notes, accounts, judgments and equitable life insurance bond, to have and to hold the said property unto the said Winnifred M. McBee and unto her heirs and assigns forever."

In December, 1907, appellee filed a petition in the probate court to have appellant make settlement of her account as guardian. In response to the petition appellant, at the May term, 1908, set up that she had paid out the money in her hands as guardian as she was authorized and directed to do under the will, as shown by her last settlement as executrix. She also set up that she had made full payment to and settlement with appellant after he became of age. Appellant also filed with the probate court her account as guardian of appellee in which she showed that she had received the sum of $1,778.21, and that she had expended for appellee during his minority, for his education and maintenance, as directed by the will, the sum of $1,831.78, and that since his majority she had paid him in cash the sum of $500, making a total paid him of $2,331.78, which was $553.57 more than she had received and to which he was entitled, and she exhibited the vouchers showing the money she had paid him. Appellant further set up in response to the petition for settlement the following:

"On the 9th day of May, 1905, at his offer and solicitation after investigation, she agreed to pay him the further sum of $1,125 for his entire remaining interest in the estate of his said father, W. C. McBee, real and personal, including the said life insurance, and all the interest which he might have in the estate of his sister, Lucy McBee, for all of which he executed

and delivered to her his deed and bill of sale and did pay him said sum."

Appellant asked that this account and showing be taken as a final settlement, and that she be discharged as guardian, and that her bond as such be canceled.

Appellee filed exceptions, setting up substantially the same facts as in his complaint herein, at the November term, 1908, of the probate court. Appellee filed his application for continuance, setting up that he had pending in the chancery court a suit to set aside and cancel the bill of sale upon which appellant was relying as a settlement with appellee, and asking that the probate court continue the cause pending before it until the trial of the cause in chancery to set aside the bill of sale and deeds was had. The probate court denied the application for continuance, overruled the exceptions to the appellant's account as guardian, found that appellant had fully accounted for and paid to appellee all of his estate that "came into her hands as guardian," and entered judgment discharging her. Appellee appealed to the circuit court, where the appeal is still pending. The suit in chancery referred to in the application for continuance mentioned above is the present suit instituted by appellee on the 6th day of May, 1908, two days after appellant had filed her response setting up the bill of sale as a settlement by appellee with appellant of her account with him as guardian. The purpose of the present suit was to cancel the deed executed by appellee to appellant, and also the bill of sale above mentioned, and to have appellant make her settlement as guardian in the chancery court. The complaint in substance alleged that appellant, as the guardian of appellee, took control of the latter's interest in the estate of his father, deceased, which consisted of an undivided one-sixth interest in a large amount of real estate, and interest in the personal estate amounting to $1,500; that appellee was not advised as to whether he acquired his interest in the said estate by inheritance or by last will and testament; that appellant as guardian aforesaid collected from the estate of Lucy McBee, deceased, appellee's sister, his share in her estate, amounting to $200. The complaint contains these further allegations and prayer:

"That at the death of W. C. McBee appellee was one of the beneficiaries in a life insurance policy for $6,000 on the life of said W. C. McBee; that said guardian has collected on said policy $2,700, one-third of which, under the terms of said policy, would be the property of appellee; that there remains due on said policy $3,300, one-third of which would be the property of appellee, making the total value of his estate, in addition to his interest in the lands, the sum of about $3,700; that from the appointment of said guardian until appellant reached his majority, on the 20th day of February, 1905, said guardian never filed with the probate court a settlement or statement of her guardianship; that the sum of about $1,600 has been paid to or for this appellee for which said guardian should have credit; that on the 15th day of May, 1905, the appellant falsely and fraudulently represented to appellee that the only interest he had in his father's estate aforesaid was his interest in the lands above described, falsely and fraudulently representing to the appellee that he had no interest in the life insurance money so collected, and that he had no interest in the remainder of the said life insurance money to be collected, and falsely and fraudulently representing to the appellee that the said property owned by him was not of the value of more than $1,000; that on the 15th day of May, 1905, the appellee, believing and relying on such false and fraudulent representations aforesaid, for the said inadequate consideration aforesaid executed and delivered to the appellant a deed to his interest in said lands; that at the same time, relying on said false and fraudulent representations aforesaid, he executed and delivered to the appellant an instrument purporting to be an assignment and settlement of all his interest in all his personal estate in her hands; the appellant well knew at the time of the execution of said deed, assignment and settlement that said representations were false and fraudulent and made for the purpose of cheating this appellee; that, had he known the condition of his estate, he would not have executed said deed and assignment, and that said settlement is unfair, unjust and inequitable and should be canceled; that, on an accounting, the defendant will be found due the appellee as his guardian a large amount of money over and above all that she has ever paid him, for which she is en-

titled to credit on account of said deed and assignment; that there is no necessity for a further administration of the estate of the appellee in the probate court, as there are no debts owing to said estate, nor are there any debts due said estate that would require the assistance of his guardian or the probate court; that, after the cancellation of the instruments above described, the only thing remaining to be done would be to ascertain the amount due from said guardian to her ward and direct payment of the same. Wherefore he prays that said deed and settlement and assignment be canceled; that appellant be required to account in this court for her said guardianship, and that she be required to pay over the amount of money and property found due said ward and all other proper equitable relief."

The appellant moved to have the complaint made more specific, and among other grounds alleged that it does not show or state whether he claims to have acquired said estate by inheritance as an heir of said W. C. McBee or by a last will and testament of the said W. C. McBee; that said complaint is indefinite and uncertain in that it does not show that he was the owner of the money collected and to be collected on said life insurance policy or merely claims it because his name appeared in said policy as a beneficiary; that said complaint is indefinite and uncertain, in that it does not show or state whether said guardianship has been settled in the probate court and passed from the jurisdiction of said court and he is seeking to open the settlement made in said court and surcharge same, or that said guardianship is still pending in said court and within its jurisdiction.

The motion was overruled. Appellant then demurred on the ground that the complaint did not state facts sufficient to give the court jurisdiction and did not state a cause of action. The demurrer was overruled, and appellant answered and set up that she had received as executrix of the will of W. C. McBee the interest of appellee in the real estate which had been sold, and in the personal property amounting in the aggregate to $1,778.21, as shown by her settlement as executrix, and that she had fully administered the same and had paid to appellee in excess of what came to her hand as executrix the sum of $5,335.70; that her settlement with the probate

court fully adjudicated all expenditures made for him. She
further set up that Lucy McBee was her child; that she had
died, and appellant, her mother, had inherited her share of
her father's estate.    She set up the provisions of the will as
to the life insurance; alleged that appellee had attended school
for seven years, and that she had paid him of the life insur-
ance money the sum of $350, according to his father's will, which
was all that was due him under the terms of the same.    Fur-
ther answering, she set up her purchase of appellee's interest
in the real estate and personal property after he became of
age, and for which she paid him the sum of $1,125, and in
full settlement of her guardianship.

She denied that she made any false or fraudulent repre-
sentations to him about his interest in said estates or as to
their value, but states the facts to be that she fully advised
him of all property in which he held an interest, its true con-
dition and value, and that, as he was of full age, they had a
full, fair and complete settlement, in which he ratified all ex-
penditures made for him during his minority and all moneys,
clothing and other things of value which she had furnished
him during said period of time.

She set up that her settlement as guardian of appellee was
pending in the probate court at the time this suit was insti-
tuted, in which she was to account in full for all funds coming
into her hands and expenditures made by her under the last
will and testament of W. C. McBee, and by appointment as
guardian by the probate court of Marion County.    She avers that
the appellee appeared in the probate court and filed exceptions
to said settlement, raising the same issues as contained in
his complaint here.    She attached a copy of the exceptions, and
made it a part of her answer, and alleged that the court over-
ruled the exceptions and confirmed said settlement.    She set
up that the chancery court had no jurisdiction, and prayed that
appellee's complaint be dismissed.

The testimony of appellee was to the effect that he signed
the deeds and bill of sale, believing that it was only a deed to
his interest in the land that he was signing; that appellant had
offered him $1,000 for his interest in the land only, and that he
accepted the offer, and when he signed the papers he did not

read them. In explanation of why he did not read them he said that "his mother died when he was small, and appellee took the place of his mother, and he trusted her like any boy would trust his mother; never thought of anything wrong; had absolute confidence in her and what she said, and did not think it was necessary to read the papers." He asked her in the notary's office "if it was just for the land only, and she said it was," and he "never examined the papers, but trusted her, and just signed my name where she pointed out for me to sign." He said he had never handled a deed or bill of sale before, and did not know how many parts there were to a deed; did not understand a deed. "If," he says, "I had known that I was selling my interest in my personal property and life insurance, I would not have signed the papers." On the other hand, the testimony of appellant was to the effect that she paid appellee the sum of $1,125 for his interest in the land and for the interest he claimed in Lucy McBee's estate, and for his entire interest in the personal property of every character that he claimed in his father's estate. She states that, in answer to letters from appellee requesting her to send him money, she had written him that he did not have any more money in her hands, that his account was overdrawn. She wrote him that the only interest he had was the land. He asked her what it was worth, and she told him she thought it was worth $1,000. "Before he came down (referring to the time when the deal was finally consummated), she says, "we had passed some letters in regard to the estate, and I had made him an offer. Then I received a letter, a few days before he came down, that he would accept the offer for his land, and to send him some money at Eureka, but he followed up his letter in a few days, and then was when we made our trade." She was asked if land "was not the only thing she was buying," and replied: "We just made our talk, and each agreed that I would buy his interest in his father's estate and in Lucy's estate is the way we made the talk exactly—that I was buying whatever interest he might have." She testified that after the trade was thus agreed to they went to the law office of S. W. Woods to have him draw up the papers; did not find him, but his brother and partner, John H. Woods, was in the office, and they talked to him about the matter. She asked him to go with appellee to the court

house and get the papers, so they could look over them, and so that appellee would be satisfied with the deal they had made. She states the different settlements were shown him. At that time he didn't say anything. He seemed to be satisfied with the account; said he was. John H. Woods was not familiar with the business, and they decided in his presence that appellant should pay appellee $500, as he was in a hurry to go to Eureka and wanted to get away that day. They arranged for appellant to have the papers prepared and to take them to Eureka where appellee was to execute them, and she was to pay him the balance of the $1,000; all of which was done. She stated that appellee at the time he signed the papers fully understood them. She handed the deeds and bill of sale to him, and he handed them to the notary. The notary looked at them, and said there are two deeds and a bill of sale. The papers were separate. She did not show him where to sign. The notary was doing that; appellee then signed them, and the notary took his acknowledgments. Appellee knew at the time that she had inserted in the bill of sale the life insurance matter, because she told him she was going to insert it and what the personal property consisted of, which was notes, accounts, money and Equitable Life Insurance policy." Much of appellant's testimony had reference to the manner in which she disposed of the funds of appellee, and was relevant only to the question of accounting, and not necessary to set forth on the issue of setting aside the instruments. She testified as to the correspondence between them, and exhibited some of the letters of appellee to her. Among these was one dated February 28, 1905, in which he asked appellant why she had not sent the $100, requested in a former letter, and further stated as follows: "I guess we had better settle up our business. You pay me my part of the estate, and it won't be any bother to you hereafter. What has become of my father's life insurance? It was to be used to educate Myrtle, Maude and myself. Let me hear from you at once." In a letter of April 18, 1905, he wrote appellant, wanting to know why she had not sent him $500 that he had written for some time before, saying he needed the money. In this letter he further stated that he was going to Eureka, and if he did not get the money he would have to come home and find out what was the matter; and

further stating, "Maybe I had better come home anyway and fix up the estate. This monkey business is getting old." These letters were written after appellee became of age, and the last one but a few weeks before he executed the deeds and bill of sale. E. C. McBee, a brother of appellee, testified that in a conversation with appellee about the last of April or the first of May appellee stated he would have to go down and settle up with appellant. Witness told him "to be sure to get what was coming to him." After he came back witness asked him if he got all that was coming to him, and he replied: "You need not be uneasy. I got all that was coming to me." It was shown that appellant received from the administrator of the estate of Lucy McBee the sum of about $840. Appellant testified that two courts had decided that she was the owner, but she concluded notwithstanding to distribute it among the McBee children. She had her settlement with appellee before the estate of Lucy McBee was settled, and they estimated that $25 would be appellee's one-sixth. However, it was afterwards ascertained that the exact amount was $140. It was in evidence that appellee's interest in the real estate at the time he sold same to appellant was not worth more than $500.

The testimony of John H. Woods corroborated the testimony of appellant to the effect that the trade agreed upon between appellee and appellant while in his office contemplated the transfer of the entire interest of appellee in the McBee estates and the final settlement of all the matter between them, including her guardianship.

It was shown that appellee did not make any claim to an interest in the McBee estate for more than two years after he executed the deeds and bill of sale mentioned above, and he did not bring his suit to set these aside until three years, lacking one day, had elapsed. His explanation of this was that he did not know that his name appeared in the insurance bond until the latter part of May or first of June, 1907, when his attorney in Kansas City looked through the papers and reported that the policy was payable to appellee and his two sisters; that was all he knew about it before that time except that a portion of his father's insurance was to be paid for his tuition. Appellee had, however, after he became of age, signed one of the insurance coupons which showed on its

face that the policy was made payable to him and his two sisters.

The chancery court, among other things, found that the appellee entered into the private settlement with, and executed the bill of sale to, appellant without understanding his rights, and without full knowledge of the facts pertaining thereto, and that there was no consideration paid to appellee by appellant for said settlement and bill of sale. The court then entered a decree cancelling the bill of sale, and transferring the branch of the case asking for an accounting to the circuit court where the probate settlement was pending on appeal.

Appellant appealed from the entire decree, and appellee appealed from that part of the decree which transferred the matter of accounting to the circuit court.

*S. W. Woods,* for appellant.

1. It is clear from the terms of W. C. McBee's will that he intended that appellee and his sisters should accept the property and other benefits secured to them by the will in lieu of their interest in his life insurance. Appellee could not accept these benefits and at the same time retain his full interest in the life insurance. Jarman on Wills 386; 13 L. R. A. 567 and notes; 4 L. R. A. (N. S.) 1065 and notes; 63 Ill. 285; 52 Ark. 473; Bispham, Eq., § 295; 73 Ark. 344; *Id.* 221.

2. The chancery court was without jurisdiction; appellant's settlement was still pending in the probate court at the time this suit was brought. 32 Ark. 186; 33 Ark. 575; 20 Ark. 526; 49 Ark. 51. A bill in equity to surcharge a guardian's settlement will only lie for fraud or mistake, and it should set out with precision the false or fraudulent charges or credits. 14 Ark. 360; 48 Ark. 544; Woerner on Guard. 365; 49 Ark. 31; 51 Ark. 1.

3. Where, by the provisions of a will, the executor is directed to expend a portion or all of a minor's interest in the testator's estate for the support and education of the minor, the executor is in effect made a testamentary trustee, and the court would have no power, while the executor faithfully discharges his duty, to order him to pay over any money or property to the statutory guardian. Woerner on Guard. 57; 97 Ill. 429. Where the same person is executor or administrator of

the estate of a decedent, and guardian of his minor children, liability as guardian begins only where his accounts as executor or administrator show a transfer to his account as guardian. 9 Am. & Eng. Enc. of L. 122, 123; 48 Ark. 544; Woerner on Guard. 57.

4. Appellant should be allowed credit for money expended in the education and support of the minor. In equity appellee will not be permitted to reject or disallow expenditures made for his benefit, unless he himself does equity. He cannot assail the settlement for fraud in taking credit for such expenditures. 48 Ark. 386; Id. 297; 83 Ark. 223.

5. Even if there were any fraud, either actual or constructive, perpetrated in this case, yet the appellee has not placed himself in a position to ask for equitable relief by restoring what he has received, or making proper compensation for the benefits received. 1 Beach, Mod. Eq. Jur. § § 67, 137; 25 Ark. 196; 53 Ark. 16.

6. Fraud will not be presumed, but must be proved and expressly found. Fraud and injury must concur to furnish ground for judicial action. 11 Ark. 378; 53 Ark. 275; 12 Ark. 296.

*J. W. Black* and *Sam Williams,* for appellee; *Thomas M. Pratt,* of counsel.

1. W. C. McBee had no right to dispose of the life insurance by will. The interest of the beneficiaries was vested by the terms of the insurance contract. 12 S. W. 477; 17 S. W. 874; 71 Ark. 295. Before an election can be required, it must clearly appear from the instrument itself that an election was intended. Jarman on Wills, 425-6-7. Moreover appellant is estopped. Kirby's Dig. § 3827.

2. The chancery court had jurisdiction. The case had passed beyond the jurisdiction of the probate court by reason of the private settlement and bill of sale, and there was no remedy at law. 90 Ark. 444; 42 Ark. 186; 48 Ark. 544; 33 Ark. 727. Where there is fraud, there is equity jurisdiction. 33 Ark. 425.

3. Whether acting under the will or by appointment as guardian, appellant is chargeable with money and property received. Kirby's Dig. § 3763. She will not be permitted to confuse her settlement as executrix with her account as guardian. 21 Cyc. 275-6.

4. The will in this case confers no greater authority with reference to the support and education of the minor than that conferred upon a guardian by statute. Kirby's Dig., § 3777. And the statute controlling expenditures, *Id.* § 3792, is mandatory. Expenditures made, not in compliance with this statute, are at the peril of the guardian. 63 Ark. 450; 49 Ark. 75. See also 21 Cyc. 169.

5. The evidence shows that the only interest appellee thought he was selling, and appellant was claiming to buy, was his interest in the land. On a settlement appellant is entitled to credit for what she has paid lawfully to or for appellee, and is chargeable with what she has received. The land and the amount paid for it, should not be considered. Such settlement would place appellant *in statu quo.* Appellant is not entitled to money expended by appellant before he was 21 years of age. Kirby's Dig., § 2792; 63 Ark. 450.

6. The bill of sale should be cancelled. To sustain a private settlement with a ward, the guardian must show that he fully disclosed the condition of the ward's estate, exercised no undue influence and that the settlement was fair and equitable. 21 Cyc. 169-170.

WOOD, J. 1. Cancellation of instruments is one of the well-recognized grounds of equity jurisdiction. It operates indirectly to establish or protect primary rights. It is often granted as ancillary and "preliminary to the final relief by which a party's primary right, estate or interest is established and enforced." It is a remedy which belongs exclusively to the equity jurisdiction, and is exercised in order to remove the obstacle which stands in the way of the enjoyment of one's right, interest or estate. "The occasions giving rise to the jurisdiction are mistake, fraud and other instances where enforcing instruments or agreements would be inequitable or unjust. A doubt was formerly entertained as to whether a court of equity ought to exercise its jurisdiction to order instruments absolutely void at law, and not merely voidable, to be delivered up and cancelled, since the legal remedy of a party was adequate and complete, and no case was presented for equitable interference, but it is now well settled that jurisdiction will be exercised in such cases except where the invalidity of the instrument is apparent on its face." Pomeroy, Eq. Jur., § § 170-2, 1377. But, while the

chancery court had jurisdiction of the subject-matter of the cancellation of the deeds and bill of sale, it had no jurisdiction over the settlement of the guardian while that was still pending in the probate court. The bill of sale on its face was evidence of the settlement of appellant with appellee. But it was not the settlement itself. Unattacked for fraud or mistake, it would have to be taken as conclusive evidence of the settlement. Hence appellee could go into chancery to have the bill of sale cancelled. Such relief was only ancillary to the settlement itself, and, the bill of sale being out of the way, the question of settlement still remained in the probate court. The chancery court therefore did not err in refusing to entertain the question of accounting, leaving that matter for final determination by the probate court. This is not a complaint to surcharge and falsify a confirmed settlement in the probate court for fraud. As to the accounting, it is sought to take it out of the probate court before that court has finally disposed of it. That can not be done. *Coppedge* v. *Weaver,* 90 Ark. 444; *Turner* v. *Rogers,* 49 Ark. 51; *Hankins* v. *Layne,* 48 Ark. 544; *Dyer* v. *Jacoway,* 42 Ark. 186.

2. The next question is, did the court err in setting aside the bill of sale? Says Professor Bispham: "Cancelling an executed conveyance is the exertion of a most extraordinary power in courts of equity, and when asked for on any ground it will not be granted unless the ground for its exercise most clearly appears." Bisp., Eq. Prin., § 475. The evidence to overcome the "written memorial must be clear, unequivocal and decisive." *Carnall* v. *Wilson,* 14 Ark. 167; *Rector* v. *Collins,* 46 Ark. 167; *McGuigan* v. *Gaines,* 71 Ark. 614; *Goerke* v. *Rodgers,* 75 Ark. 72.

Appellee alleges and contends that the mistake he made in signing the instruments was caused by the misrepresentation and concealments of appellant and his misplaced confidence in her. In other words, he charges appellant with actual fraud, and seeks relief solely on that ground. The evidence fails to convince us that appellee is the victim of misplaced confidence. He says he trusted the appellant as a boy would trust his mother, and hence signed the papers without reading them and without understanding them, and thought that he was only signing a deed to the land, as that was what appellant repre-

sented.  In the light of all the other evidence, we are of the
opinion that there was no misrepresentation and no conceal-
ment upon the part of appellant.  Nor did appellee execute the
instruments through any misapprehension caused by appellant,
or because of any trust and confidence reposed in her.  His own
letters and the testimony of his own brother show that before
the instrument was executed he had begun to distrust appellant,
and that he was determined, when he made the settlement with
her, "to get all that was coming to him."  He assured his
brother of that fact, and there is no doubt from all the testimony
in the record that when he made the settlement with appellant
and when he executed the instrument evidencing such settle-
ment he was dealing with her at arm's length.  Appellee was of
age, had received excellent advantages of education, and the
record does not disclose any evidence of mental imbecility on
his part, but rather the opposite.  The law is that "a settlement
of a guardian with his ward shortly after the latter's majority
will be closely scrutinized.  The burden of proving good faith
rests upon the guardian.  To sustain a private settlement, the
guardian must show that he fully and clearly disclosed the con-
dition of the ward's estate at the time of the settlement, that he
exercised no undue influence, and that the settlement is fair
and equitable."  21 Cyc. 169.  The conduct of appellant in deal-
ing with appellee measures fully to the required standards.  There
is a general finding by the court that appellee executed the bill
of sale to appellant "without understanding his rights and with-
out full knowledge of the facts pertaining thereto."  The evi-
dence does not warrant the finding that appellee signed the bill
of sale without full knowledge of the facts pertaining thereto.
The testimony of appellant is certainly entitled to as much
credit as that of the appellee.  Appellant testifies (and her testi-
mony is corroborated) that appellee did understand that the
settlement was to be a full settlement, and that she explained
everything thoroughly pertaining to the McBee estates.

Appellee testified that he did not know, at the time he signed
the bill of sale, that the life insurance was payable to him and
his sisters, but the testimony of appellant shows that as early
as 1903 he knew that the insurance was payable to him and his
sisters, Myrtle and Maude, and his own testimony shows that

after he was of age, and in February or March before he signed
the bill of sale, he signed one of the insurance coupons which
showed on its face that he was a beneficiary in the policy. He
testified that he did not know that the bill of sale included his
interest in the life insurance policy, but again he is contradicted
by appellant, who says that she told him that she "was going
to insert it in the bill of sale," and "what the personal property
consisted of, which was notes, accounts, and money and Equi-
table life insurance policy." The decided preponderance of the
evidence is against him on the facts. The record, however,
does disclose that both appellee and appellant were ignorant of
the law giving to appellee the right, if he elected, to take his
interest in the life insurance, notwithstanding the testator had
disposed of it in his will and had given most of it to appellant.
Conceding that appellant as guardian should have known the
law in this respect and should have imparted that knowledge
to appellee, still it does not follow that the bill of sale should
have been cancelled under the facts of this record.

It clearly appears that in a settlement with appellant appel-
lee would have to accept the provisions of the will as to the dis-
position of his insurance money, or else repudiate the will and
reimburse appellant the amount she has lost by reason of such
repudiation. The language of the will is unmistakable. The
testator disposed of the insurance money of appellee, giving
most of it to appellant and making other provisions for appellee
in the will. Its language is such as to require an election on the
part of appellee. "The doctrine," says this court in *Fitzhugh* v.
*Hubbard,* 41 Ark. 68, "rests upon the principle that a person
claiming under an instrument shall not interfere, by title para-
mount to prevent another part of the same instrument from
having effect according to its construction. He can not accept
and reject the same instrument. * * * If he chooses to dis-
regard the will and retain his own property, he must make good
the value of the gift to the disappointed beneficiary." See other
authorities cited by appellant and *McDonald* v. *Shaw,* 92 Ark.
15. Now, under the will appellant received of the insurance
money belonging to appellee the sum of $1,650. If appellee re-
jected the will, then he would have to reimburse appellant out
of the other property which he received under the will.

If appellee was ignorant of his rights when he executed the deeds and bill of sale, he was full panoplied with legal advice when he went into a court of chancery nearly three years after to have those instruments set aside. He was not ignorant then, yet he seeks the equitable remedy of cancellation without himself offering to do equity. He should be held to his election, either to accept the terms of the will or to reject them. He cannot hold on to the estate given him by the will, and take away from appellant the part of his estate that was given to her. He must renounce the will and take the property, making compensation to appellant out of the other property given to him by the will for the loss she has sustained by reason of his renunciation, or else he must content himself with the provisions made for him in the will. He can not take all of his property under the will and his insurance money, too. But this is precisely what he is trying to do. He does not offer in his complaint to restore to appellant, if she desires, the purchase money that he received from her for the lands and other property conveyed and transferred to her, for which she paid him the sum of $1,125 He did not offer, if the deeds and bill of sale were cancelled, to take back the land and to return the purchase money given in consideration for these conveyances. He did not propose, and the court did not require as a condition upon which the relief would be granted, that he put appellant, as far as possible, *in statu quo*. This was indispensible to any relief. Furthermore, if this had been required, and appellee had been held to his election under the will, still this record discovers no facts to warrant the court in granting him the extraordinary remedy of cancellation of full settlement he had made with appellant. For, if appellant be charged with all that she received of the estate of appellee under the will, and credited with all she paid out to and for him and reimbursed the life insurance money she would lose by his election, then she would owe him nothing. The testimony shows the interest of appellee in the land at the time the bill of sale was executed was worth not exceeding $500, and the interest he claimed in the Lucy McBee estate amounted to $140. This makes a total of $640 that appellant paid appellee for his interest in the land and in the McBee estates if the notes, accounts, and insurance money were not to be included in the settlement, as appellee contends. But appellant actually paid

the sum of $1,125, or the sum of $485 in excess of the value of appellee's alleged interest in the Lucy McBee estate and his interest in the unsold land of his father's estate. This court may consider what would be the result of a settlement under the facts of this record in order to determine whether there is any equity in appellee's complaint. The result of such a settlement, stating the account according to the undisputed facts, would be about as follows:

Winnifred McCracken, Guardian, in account with Victor B. R. McBee, her ward:

### DR.

To amount of estate not including life insurance.....$1,428.21
To value of land and interest in Lucy McBee estate... 640.00
To life insurance money ........................ 2,000.00

Total ...................................$4,068.21

### CR.

By amount conceded by appellee .................$1,600.00
By life insurance money to be returned to her........ 1,650.00
By amount paid for land and interest in McBee estate.. 640.00
By amount of difference as consideration paid for settlement ................................. 485.00

Total ...................................$4,375.00

making a difference in appellant's favor of $306.79.

In no event, therefore, could appellee be benefited by a settlement, and the court erred in cancelling the evidence of such settlement.

Reversed and dismissed for want of equity.