HALL 'BROTHERS *v.* MOORE & McFERREN.

Opinion delivered March 8, 1920.

1. CONTRACTS — FORFEITURES.—Forfeitures of contracts are not favored in equity.

2. CONTRACTS—CONSTRUCTION.—Where plaintiffs employed defendants to clear a certain half section for so much an acre, and agreed to rent the land to defendants for five years at $5 per acre, after a certain date when the clearing was to be completed, and thereafter sued defendants for rent at $15 per acre, alleging a forfeiture of the contract for failure to complete the clearing, and defendants alleged that the clearing was not completed because plaintiffs had failed to ditch the land as agreed, a finding of the chancellor that there had been no breach of the contract by defendants because the plaintiffs had failed to comply with their agreement to drain the land was sustained by the evidence.

3. REFORMATION OF INSTRUMENT—SUFFICIENCY OF PROOF.—To entitle a party to reform a contract, the proof must be clear, unequivocal and decisive.

Appeal from Mississippi Chancery Court, Osceola District; *Archer Wheatley,* Chancellor; affirmed.

*W. J. Driver,* for appellants.

Appellants were entitled (1) to the use of the north half of section 8 for the year 1918 free of rent for the failure to provide drainage and according to the express terms of the contract; (2) in the alternative to the actual damages sustained by reason of the failure to provide drainage, and (3) to reformation of contract to include the south half of section 8, commencing January 1, 1918, for five years, and the chancellor erred in failing to so find. The attention of the court is called to the following decisions on the questions raised: 90 Ark. 272; 94 *Id.* 471, 493; 112 *Id.* 1.

A forfeiture will not be declared except on compliance with the contract by the complaining party. 100 Ark. 565. Appellee can not complain of the breach of the clearing contract because whatever was done and not done was due entirely to appellees' conduct. 85 Ark. 596; 102 *Id.* 152. See, also, 15 Ark. 376; 22 *Id.* 258; 64

*Id.* 228. The contract was substantially performed, as the proof showed, and appellants are entitled to the fruits. 131 Ark. 469. A substantial compliance is all that is required to authorize a recovery. 105 Ark. 353. Good faith is requisite. On the question of waiver, see 102 Ark. 79.

Appellants are entitled to reformation of contract to include all of section 8, as the testimony clearly shows. The burden was on appellants, and they have met it squarely. There was no bad faith on part of appellants. The testimony as to section 8 shows an arbitrary and flagrant disregard of appellees' obligations to Hall. They did nothing they obligated themselves to do. A court of equity will not permit such intolerable conduct. The intention of the parties should be ascertained and carried into effect. 3 Elliott on Cont., § 2365. If mistakes are found, reformation to correct them should be granted. 98 Ark. 28; 135 *Id.* 607; 2 Pom., Eq. Jur., 1183; 132 Ark. 227. Not only in mutual mistake, but where there is mistake on part of one party, coupled with fraud on the part of the other, reformation should be granted. 98 Ark. 23; 174 S. W. 1158; 89 Pac. 671; 135 Ark. 293; 132 *Id.* 227. We have brought ourselves fairly within the rule laid down. *Supra.*

*J. T. Coston*, for appellees.

Hall clearly failed to comply with the contract. The chancellor heard the evidence and refused rightfully to reform the contract and the decree is supported by the evidence. 48 Ark. 501; 32 *Id.* 346. To justify reformation the proof must be clear, unequivocal and decisive. 131 S. W. 701. The mistake was not proved. 77 S. W. 53; 101 *Id.* 724; 131 S. W. 452; 141 *Id.* 943-4. The mistake must be mutual, and the minds of the parties must have met or there is no contract to reform. 20 Wall. 490-1. See, also, 120 S. W. 839; 85 *Id.* 769. Hall was not entitled to reformation under the proof. He failed to build the houses as he contracted to do. When the contract was signed, war was brewing and actually com-

menced soon afterward. Hall failed to clear the land within the time required by the contract. The whole decree is fair and just to both parties and should be affirmed.

WOOD, J. The appellees, hereinafter for convenience called Moore, brought this action against the appellants, hereafter for convenience called Hall, to recover rents for the year 1918 on 320 acres of land at $15 per acre.

Hall denied liability and set up a contract entered into between him and Moore on the 16th of November, 1916, the material parts of which are substantially as follows: Hall agreed with Moore to clear all the north half of section 8 in Mississippi County, Arkansas, for $9 per acre and to clear "everything east of the railroad between now and March 1, 1917," and to finish all clearing west of the railroad by January 1, 1918. Hall agreed to move his force upon the land at once and to have them all on the land not later than December 1, 1916, and to plow the land as it was cleared. Moore agreed to build a house on every twenty acres as fast as possible, to build one barn and one five or six room house like the "Boyle House." Moore agreed to give the first year's rent free of charge for all lands cleared and plowed by March 1, 1917, regardless of whether the contract was completed in full or not. If Hall cleared all the lands east of the Wilson-Northern Railroad on section 8, in time to put in a crop that year Moore agreed to rent him the north half of section 8 for five years longer at $5 per acre. Hall was to pay $5 per acre for all lands that had been plowed on the north half of section 8. Moore agreed to ditch the land (in his own way) the same as other lands in cultivation. In case of failure to ditch the lands on time the contract was to be extended until same was done.

The testimony of Moore tended to prove that from the date of the contract of March 1, 1917, Hall had not complied with the contract by clearing all the land east of the Wilson-Northern Railroad; that there were about

thirty or forty acres of that land not cleared, and that of the lands in the north half of section 8 on both sides of the railroad there were seventy acres that were not cleared and put in cultivation during the year 1917.

The testimony of Hall tended to prove that all of the lands east of the railroad were not cleared by March 1, 1917, for the reason that Moore failed to provide sufficient drainage to enable Hall to clear the lands within the time specified in the contract. Hall contends that under the contract Moore was to ditch the land in advance of the clearing. He also contends that Moore had failed to comply with the provision of the contract which required him to build a house on every twenty acres as fast as possible.

Forfeitures are not favored. It is clear when the contract is considered as a whole that it was not contemplated that Hall would forfeit his rights under the contract if he failed to clear everything east of the railroad by March 1, 1917, and all of the land west of the railroad by January 1, 1918. Time was not made the essence of the contract by the naming of these dates. On the other hand, it is equally clear that it was not in contemplation of the parties that if Moore failed to build the houses or ditch the land in time to enable Hall to clear the lands east of the railroad by March 1, 1917, in such event Hall was to have the use of the land free of rent for the year 1918.

When the provisions of the contract are all considered, we are convinced that it was the intention of Moore to negotiate with Hall for the clearing of 320 acres of land during the year 1917, and that he was offering to Hall as the inducement and consideration, $9 per acre for the clearing and free rent during the year 1917 for all land that Hall might clear and plow by March 1, 1917. As a further consideration and inducement to having all the lands cleared east of the railroad by the first of March, Moore agreed that Hall should have the land both east and west of the railroad embracing the north half of section 8 for a period of five years from January 1, 1918,

the latter date being the time fixed when Hall should finish clearing all of the land.

It appears from the language of the contract that it was the purpose of Moore, for some reason not disclosed in the contract, to have all the land east of the railroad cleared first and to have that done by March 1, 1917, and the entire tract of land cleared by January 1, 1918. The written provision of the contract shows that it was to come to an end and so far as the clearing was concerned on January 1, 1918. Under the terms of the contract, as we construe it, Moore was also bound to ditch the lands that had been cleared the same as other lands that were in cultivation and have the ditching completed by January 1, 1918. But if for any reason the ditching had not been completed by that time then the contract was to be extended until the ditching could be completed.

The testimony shows that by January 1, 1918, Hall had failed to clear seventy acres of the land, thirty or forty acres of which were east of the railroad. Hall claimed, and the testimony adduced in his behalf tended to prove, that he was unable to clear the lands embraced in his contract because it was not sufficiently drained. He also adduced evidence tending to prove that Moore had not complied with the contract in regard to the building of the houses.

The testimony of Moore, however, and evidence adduced in his behalf, tended to prove that Hall was not delayed or obstructed in his clearing operations by any failure on the part of Moore to build the houses mentioned in the contract. Moore also contended that under the contract he was not to drain the land in advance of the clearing but was only to have the same drained after the clearing was done preparatory to the cultivation.

The court below found that there had been no breach of the contract on the part of Hall, such as to cause a forfeiture of his right to clear the seventy acres after January 1, 1918. The court doubtless reached this conclusion for the reason that Moore had failed to properly

drain the land that had been cleared in time for the proper clearing and cultivation thereof.

The trial court found that Moore was entitled to recover of Hall rent at the rate of $5 per acre on all of the lands that had been cleared by January 1, 1918, on the north half of section 8 for the year 1918, and that Hall was entitled to an extension of the contract for a period of five years including the year 1918. The court further found that Moore was entitled to collect rent from Hall at the rate of $5 per acre on such parts of the seventy acres as were then cleared or that might thereafter be cleared, but that Hall was not required to clear the seventy acres until Moore had drained the same.

The court upon these findings of fact entered a decree in favor of Moore on his complaint in the sum of $1,287.50, representing the rent for the year 1918, at the rate of $5 per acre on the land that had been cleared by Hall on the north half of section 8.

It would unduly extend this opinion to set out and discuss in detail the testimony upon which Hall relies to sustain his contention that Moore was not entitled to recover rent for the year 1918 because he had violated the terms of the contract by failing to drain the lands as therein required.

It is also unnecessary to discuss in detail the testimony upon which Moore relies to sustain his contention that Hall had failed to clear the lands as required by the terms of the contract.

We have reached the conclusion that the preponderance of the evidence shows that there was not a sufficient breach of the contract by either party to justify the conclusion that the contract was at an end on January 1, 1918, and that its mutual obligations were no longer binding upon the parties. The trial court ruled correctly in deciding otherwise. A careful consideration of the evidence convinces us that the findings of fact by the trial court are not clearly against the preponderance of the evidence, and its construction of the contract is really more favorable to Hall than perhaps the letter of the in-

strument warrants. However, Moore has not appealed, and therefore has expressed himself as satisfied with the decree awarding to Hall the right to hold the cleared lands for a period of five years from January 1, 1918, at a rental of $5 per acre and to clear and hold the seventy acres at the same rate after Moore had drained the same.

The court was also correct in the conclusion that Hall was not entitled to reformation of the contract so as to give him a lease on all of the lands of section 8 instead of the north half as set forth in the contract.

Hall contends that the contract contemplated that, if he cleared the north half of section 8, as specified in the contract, he was to then have a lease on all of section 8.

The instrument itself plainly expresses that "parties of the first part (Moore) agreed to rent them (Hall Brothers) the north half of section 8, etc." To effectuate the purpose which Hall contends was intended by the instrument, the language "north half of section 8" should have been "section 8" or "all of section 8."

Hall alleges in his cross-complaint that "through fraud and mistake in the preparation of the contract it recited the north half of section 8 instead of all of said section. After a careful consideration of the evidence we have reached the conclusion that this allegation is not sustained by a preponderance of the evidence. In the absence of fraud, to entitle appellant to a reformation of the instrument, so as to make it read as he contends, the proof must be clear, unequivocal and decisive. *McGuigan* v. *Gaines,* 71 Ark. 614; *Ark. Mut. Fire Ins. Co.* v. *Witham,* 82 Ark. 226; *McCracken* v. *McBee,* 96 Ark. 251; *Cheatham* v. *J. W. Beck Co.,* 96 Ark. 230.

The testimony adduced by Hall on this issue, even though it may preponderate in his favor, is not sufficient to meet the above requirements. If the parties had intended to include all of section 8 instead of the north half, then a mere casual reading of the contract would have discovered that the intention was plainly not expressed therein, but on the contrary the purpose to embrace the "north half" was plainly stated. Moore and another

witness testified that Hall read the contract carefully before signing the same.

The most that can be conceded to Hall is that there is a decided conflict in the evidence on this issue with a preponderance in his favor, but that does not fill the measure of the requirements of the law to entitle him to reformation of the contract.

The decree is therefore correct, and it is affirmed.