CRITTENDEN COUNTY, ARKANSAS *v.*
James R. WILLIFORD

84-117                                    675 S.W.2d 631

Supreme Court of Arkansas
Opinion delivered September 24, 1984
[Supplemental Opinion on Denial of Rehearing
November 13, 1984.]

*Brian Williams* and *Jake Brick,* for appellant.

*Willliam R. Wilson,* for appellee.

STEELE HAYS, Justice. This case began some years ago when James Williford, appellee, brought a taxpayer's suit in chancery for the benefit of Crittenden County against its Sheriff, Marion Thomas, for an accounting of misappropriated funds. Those efforts resulted in an award in behalf of the county which was partially affirmed on appeal. [See *Thomas* v. *Williford,* 259 Ark. 354, 534 S.W.2d 2 (1976)]. On remand, the county was awarded $106,467.43 against Thomas, with lesser awards against the two bonding companies.

Williford then filed a claim of $25,480.07 with the Crittenden County Court seeking reimbursement of attorneys fees and costs incurred in prosecuting the case. The claim was denied and Williford appealed to the Crittenden Circuit Court. Crittenden County filed a response and without objection the case was transferred to the Crittenden Chancery Court on Williford's motion that equitable remedies were sought.

The Chancellor found that as a result of Williford's suit, which he likened to a class action in behalf of all taxpayers of Crittenden County, a common fund in excess of $75,000 was established from which Williford and other contributing taxpayers were entitled to be reimbursed in the sum of $22,980.07 for their costs and expenses. On appeal, we affirm the Chancellor.

Appellant's first assignment of error attacks subject matter jurisdiction in chancery. City Section 57 of

Article 7 of the Arkansas Constitution,[1] and statutes defining equity jurisdiction, the county urges that its motion to set aside the decree should have been granted notwithstanding its failure to object to Williford's motion to transfer, or its failure to challenge subject matter jurisdiction until after the Chancellor had announced his conclusions and a final decree was entered. It is true our cases hold that since jurisdiction of the subject matter cannot be conferred by consent of the parties, the absence of an objection on that basis is not ordinarily fatal. However, it must be said the rule applies only in those instances where such jurisdiction could not, *under any circumstances*, exist. *Smith* v. *Whitmire*, 273 Ark. 120, 617 S.W.2d 845 (1981); *Whitten Developments, Inc. et al* v. *Agee*, 256 Ark. 968, 511 S.W.2d 466 (1974); *Price* v. *Madison County Bank*, 90 Ark. 195, 118 S.W. 706 (1909).

We have held that where a court of equity was not *"wholly incompetent"* to grant the relief sought, questions of the adequacy of the remedy at law are waived when raised for the first time on appeal. *Titan Oil & Gas* v. *Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974). The *Titan* court stressed the failure to raise the argument before the trial court as the "underlying basis" for its holding. That is the situation before us now, and the same reasoning applies. The relationship between Williford's suit and chancery jurisdiction was not wholly lacking, yet the county not only failed to object to a transfer from law to equity, it approved an order transferring the case to chancery upon a finding that the plaintiff sought equitable relief, which might well be construed as a stipulation that the issues were cognizable in equity.

Nor can those issues be seriously questioned now. Williford's case against Marion Thomas was a taxpayer's

[1]In all cases of allowances made for or against counties, cities or towns, an appeal shall lie to the circuit court of the county, at the instance of the party aggrieved, or on intervention of any citizen or resident and taxpayer of such county, city or town, on the same terms and conditions on which appeals may be granted to the circuit court in other cases; and the matter pertaining to any such allowance shall be tried in the circuit court de novo.

suit for funds diverted from the county; it sought an accounting; it was filed and tried in chancery; it was remanded to chancery for modifications that doubtless entailed additional findings; the litigation succeeded in creating a substantial fund which still exists separate from the general funds of Crittenden County and, presumably, is still subject to the orders of the chancery court. Finally, Williford's suit was an attempt to recoup the expenses he had incurred in that difficult and costly litigation which plainly benefitted the county. In that context, how can it be said that under no circumstances could Williford's suit be entertained in equity?

Williford relies on our decision in *Powell, Mayor* v. *Henry,* 267 Ark. 484, 592 S.W.2d 107 (1980), where we upheld the Chancellor in awarding attorneys' fees out of a common fund established in behalf of taxpayers. We called such awards "well recognized and proper," citing *Marlin* v. *Marsh & Marsh,* 189 Ark. 1157, 76 S.W.2d 965 (1934). In *Marlin,* our opinion noted (and as the Chancellor observed in this case) that an important factor in consideration of fee allowance was the realization that it would be a discouragement if those who might otherwise pursue this type of litigation were inadequately compensated. Language from *Marlin* v. *Marsh & Marsh, supra,* is particularly appropriate here:

> When many persons have a common interest in a fund, and one of them for the benefit of all brings a suit for its preservation, and retains counsel at his own cost, a court of equity will order a reasonable amount paid to him out of the funds in the hands of the receiver in reimbursement of his outlay.

We conclude that equity was not incompetent to grant the relief sought by Williford, that is, an award of costs and attorneys' fees out of a common fund established because of his efforts in behalf of the other taxpayers of the county. The county may not join in a transfer of that suit to equity, try the issues on their merits, lose, and now be heard to say that subject matter jurisdiction was wholly lacking.

Another argument is that by amending his pleading after appeal, Williford enlarged upon his original cause of action. The county cites us to *Sharp County* v. *Northeast Arkansas Planning and Consulting Company,* 275 Ark. 172, 628 S.W.2d 559 (1982) and *Madison County* v. *Nance,* 182 Ark. 775, 32 S.W.2d 1073 (1930) where we held that cases tried de novo in circuit court on appeal from county court are limited to the same parties and issues. In *Madison,* after appealing to circuit court, claimants against the county were permitted to amend their complaints to increase the amount claimed, which we said they could do. In *Sharp,* we found no prejudice to the county where, on appeal, a claimant had amended his claim to reduce the amount from $7,000 to $4,530.

Here, except for a downward correction in the amount claimed, neither the parties nor the amounts were changed on appeal. We find no fundamental transformation of Williford's claim to have occurred here, and we have held that on appeal from county court the trial court has discretion in permitting amendments which do not change the original cause of action. *Saline County* v. *Kinkead,* 84 Ark. 329, 105 S.W. 581 (1907); *Freeman* v. *Lazarus,* 61 Ark. 247, 32 S.W. 680 (1895).

Next, the county contends Williford should not be awarded interest of $2,862.26, or $12,500 of the attorneys' fees advanced by others and for which he was not legally obligated. Appellant urges that interest is not recoverable against counties under Ark. Stat. Ann. § 29-124 (Repl. 1979), and that when a person pays money on an unenforceable demand, the payment is deemed to be voluntary and cannot be recovered [citing *Ritchie* v. *Bluff City Lumber Co.,* 86 Ark. 175, 110 S.W. 591 (1908); see also *Northcross* v. *Miller,* 184 Ark. 463, 43 S.W.2d 734 (1931) and *Turpin* v. *Antonio,* 183 Ark. 377, 240 S.W. 1976 (1922)]. The county claims that because other persons, not parties to the suit, had contributed some $12,500 of the amount awarded Williford, those were voluntary contributions which could not be enforced against Williford and, hence, should not be recovered by him. Appellee responds that

these arguments are new on appeal and the abstract bears out this contention. Since the appeallant has left these assertions unanswered, we will assume their accuracy. *Sun Gas Liquids Co.* v. *Helena National Bank*, 276 Ark. 173, 633 S.W. 2d 38 (1982).

Finally, the county argues that the Chancellor should not have reinstated the case following its dismissal without prejudice under Rule 10 of the Rules of Circuit and Chancery Courts. But it is quite clear that the dismissal order was entered as the result of a clerical mistake and the reinstatement of the case was a matter for the Chancellor's discretion. *Keith* v. *Barrow-Hicks Ext. Imp. Dist. 85*, 275 Ark. 28, 626 S.W.2d 951 (1982).

Finding no error, we affirm the decree.

SMITH, J., and DUDLEY, J., dissent.

GEORGE ROSE SMITH, Justice, dissenting. In 1970 the appellee Williford brought a taxpayer's suit to require the county sheriff to account for money he had received from Southland Racing Corporation and had not paid over to Crittenden County. The chancellor's decree required the sheriff to account to the county for the money. The decree was, in the main, affirmed. *Thomas* v. *Williford*, 259 Ark. 354, 534 S.W. 2d 2 (1976). On remand the final decree entered judgment against the sheriff for $106,467. Part of that amount, $29,040, was paid to the county by the sureties on the sheriff's bond. With the entry of that final decree the suit in chancery came to an end.

Later that year, on November 1, 1976, Williford filed in the county court the present claim against the county for $25,480, representing expenses and attorneys' fees that he and other citizens of the county had paid in prosecuting the earlier suit. On November 12, 1976, the county court entered an order acknowledging receipt of the money from the sureties and directing that that sum be kept in a separate and distinct fund, apart from the county general fund, "until proper distribution can be determined." The county court, however, denied Williford's claim.

After Williford appealed to the circuit court, the case was transferred to the chancery court in 1980, without objection. In 1983, seven years after Williford had filed his claim in the county court, he amended his pleadings to assert for the first time the equitable theory that his actions had created a common fund for the benefit of the taxpayers, that the fund was in the county treasury, segregated from county general funds, and that the fund was therefore subject to the jurisdiction of the chancery court. The chancellor's decree upholding that theory is being affirmed by this court.

The court's reliance upon the common-fund theory of chancery jurisdiction might well be sound if Willliford had asserted that claim in the original taxpayer's suit in 1976, when the case was still pending in the chancery court. Williford, however, permitted the chancery case to end with a simple money judgment in favor of the county and against the sheriff and his sureties. When part of the judgment was actually paid to the county, the money belonged to the county and was subject to the control of the county court, not of the chancery court. It was the county court that directed the sureties' payment to be kept separate.

Ever since 1874 our Constitution, Art. 7 § 28, has provided that the county courts shall have *exclusive* original jurisdiction in all matters pertaining to the disbursement of money for county purposes. If that court disallows a claim against the county, as in the present case, the claimant's remedy is by appeal to the circuit court, where the case is tried de novo. Such a case, however, cannot be transferred to the chancery court, for that would put the chancery court in the position of reviewing a decision of the county court. It has no such authority.

Among our many cases on the subject I need discuss only one: *McLain* v. *Brewington*, 138 Ark. 157, 211 S.W. 174 (1919). At the time of that decision all county courts and all  probate courts were presided over by the county judge, and appeals from either court were taken to the

circuit court for trial de novo. That case began as a proceeding in the probate court for the appointment of a guardian for two minors. An appeal from the probate court's decision was taken to the circuit court. The case, like this one, was transferred to the chancery court without objection. There it was consolidated with a pending suit for the custody of the two children, a matter within the jurisdiction of chancery. McLain appealed to the Supreme Court from the final decree in the con- solidated case. We reversed that part of the decree affecting the guardianship, for want of subject-matter jurisdiction in the chancery court. The court's language should, I think, control the present dispute:

> The first question presented is whether or not the chancery court had jurisdiction to hear and determine the appeal from the probate court. We are clearly of the opinion that the chancery court had no such jurisdiction. The Constitution (art. VII, § 34) confers exclusive jurisdiction upon probate courts "in matters relative to the probate of wills, the estates of deceased persons, executors, administrators, guardians and persons of unsound mind and their estates;" and there is also conferred a right of appeal to the circuit courts from judgments and orders of probate courts. There is no right of appeal to the chancery court.

> The statute authorizing transfers of causes from the circuit to the chancery court, or *vice versa,* applies only to those actions which originate in one or the other of those courts (Kirby's Digest, §§ 5991, 5994. 5595), and does not confer authority for the transfer of a cause appealed to the circuit court from one of the inferior courts. *Jackson* v. *Gorman,* 70 Ark. 88; *McCracken* v. *McBee,* 96 Ark. 251; *Brownfield* v. *Dudley E. Jones Co.,* 98 Ark. 495.

> There was no objection to the transfer of the cause, but consent can not confer jurisdiction to the subject-matter of the proceedings where such juris- diction could not, under any circumstances, other-

wise exist. *Price* v. *Madison County Bank,* 90 Ark. 195.

On the authority of that case and others, I would reverse the decree in this case and remand the cause to the chancery court with instructions to return the proceeding to the circuit court. Perhaps Williford will prevail there, but that point is not now before us.

DUDLEY, J., joins in this dissent.

Supplemental Opinion on Denial of Rehearing
November 13, 1984

679 S.W.2d 795

STEELE HAYS, Justice. By petition for rehearing, appellant has satisfied us that one of his assignments of error was sufficiently raised in the trial court and should have been answered on its merit in our opinion handed down on September 24, 1984.

Appellant contends the trial court should not have awarded Williford a judgment which included $12,500 voluntarily paid by other persons, not parties to the suit, as well as $2,862.26 in interest on that amount.

The proof showed that part of the funds used to finance the litigation against Sheriff Marion Thomas was borrowed

by James C. Hale, Sr. from the Bank of West Memphis. No written agreement existed between Williford and Hale to the effect that Hale would be reimbursed should Williford ever recover the expenses incurred in the suit.

Appellant's only authority for this argument is a familiar group of cases holding that when one person without mistake of fact or fraud, duress, coercion, or extortion pays money on a demand which is not enforceable against him, the payment is deemed voluntary and cannot be recovered. *Northcross* v. *Miller,* 184 Ark. 463, 43 S.W.2d 734 (1931); *Turpin* v. *Antonio,* 153 Ark. 377, 240 S.W. 1076 (1922); *Ritchie* v. *Bluff City Lumber Co.,* 86 Ark. 175, 110 S.W. 591 (1908).

There are two answers: first, the appellant lacks standing to raise a defense only arguably available to Williford if he were sued by others to recover contributions to the fund. Williford represented to the Chancellor that he intended to reimburse those who had contributed and whether he would be permitted to rely on the doctrine expressed in those cases if he failed to honor his commitment is, at best, hypothetical. We do not answer academic issues. *McCuen* v. *Harris,* 271 Ark. 863, 611 S.W.2d 503 (1981); *McDonald* v. *Bowen,* 250 Ark. 1049, 468 S.W.2d 765 (1971).

Second, we have said suits of this sort are often difficult and costly and where they result, as this did, in a recovery for the benefit of taxpayers, such undertakings are looked on with favor by the courts. *Marlin* v. *Marsh & Marsh,* 189 Ark. 1157, 76 S.W.2d 965 (1934).

Petition denied.