LOCUST CREEK DRAINAGE DISTRICT No. 2 *v.* SEAY.

4-3842

Opinion delivered April 29, 1935.

D. G. Beauchamp, for appellant.

Partlow & Rhine, for appellee.

BUTLER, J.  Edgar Seay, during the year 1927 and including the year 1930, was circuit and chancery clerk of Greene County, Arkansas.  By act No. 534 of the Acts of 1921 it was made his duty as clerk of the chancery court to collect the delinquent assessment of benefits of Locust Creek Drainage District No. 2 in said county.  By § 3 of that act it was provided that those desiring to redeem lands delinquent for unpaid assessments should apply to the clerk of the chancery court, who, upon the payment of the tax, penalty, interest and costs, should issue a redemption certificate in triplicate, a copy of which should be sent to the secretary of the board of commissioners of said district or the depository, if one.  The act further provided: "Said clerk shall immediately remit the amount of the tax, penalty and interest to the treasurer of the depository of said district and shall mark opposite said tract by whom redeemed and the date of such payment."

There were various redemptions made by owners of delinquent lands in Greene County in 1927, 1928 and 1929, but it seems that none of these were paid by the clerk to the person entitled to receive them.  Perhaps this was because the board of commissioners of the drainage district had ceased to function, although the record is not clear in this particular.  J. L. Light, who became the representative of the bondholders in connection with the drainage district taxes, testified that his information was that the district organization, as regards the commissioners, secretary and president, had been abandoned.  It is not shown who the depository, if any, was or the treasurer thereof.  At any rate, when Mr. Light became the representative of the bondholders, he discovered that the delinquent taxes collected by Edgar Seay had not been paid, and, from an examination of the records, concluded

that there had been about $778.08 collected by Seay for which he had not accounted. This was some time in the fall of 1931. When Mr. Seay's attention was called to the matter, he asked for time because his funds were tied up in an insolvent bank. The money not having been paid, Mrs. Seay, at a later date in 1932, made payment of the amount which Light then thought to be the correct amount delinquent. Thereafter he discovered another item which had been overlooked by him for the redemption by the Richard Land Company of certain lands on February 28, 1928, which, with the amount of taxes delinquent, penalties and costs, amounted to $1,142.14. The action from which this appeal comes was instituted to collect this item. On final hearing the trial court found for the plaintiff in the sum of $207.74 and rendered judgment therefor.

It is unnecessary to notice the various preliminary proceedings had in the court below, for it is undisputed that Seay collected, on February 28, 1928, the sum of $1,142.14 and the defense to the action to recover same is based on two propositions, first, that the sum has been paid, and, second, if not, it is barred by the statute of limitations (§ 6960, Crawford & Moses' Digest).

Appellee argues that his first contention is established by the testimony of Mr. Light. We are of the opinion that a candid analysis of this evidence shows that it does not support appellee's contention. On the contrary, it is perfectly apparent, from his testimony and the records of lands delinquent for the drainage district, that no payment was made of the item dated February 28, 1928.

It is the position of the appellee that, since the statute makes it the duty of the clerk of the chancery court to immediately pay over the delinquent taxes when collected, the default occurred on February 28, 1928; that the statute began to run from that date, and consequently its bar has attached to the maintenance of the action. The appellant contends that the clerk's relation to the sums collected was that of trustee for the district, and that with respect to the funds in his hands a trust existed in the nature of an express trust, and therefore the rule an-

nounced in *Brinkley* v. *Williams*, 22 Ark. 1, applies. This rule, stated in substance, is the same as that announced in 4 Pomeroy's Equity Jurisprudence, § 1449, which is cited by the appellant, as follows: "In cases of express continuing trust, so long as the relation of trustee and *cestui que trust* continues to exist, no length of time will bar the *cestui que trust* of his rights in the subject of the trust as against the trustee, unless circumstances exist to raise a presumption from lapse of time of an extinguishment of the trust, or unless there has been an open denial or repudiation brought home to the knowledge of the *cestui que trust.*"

In reply to this contention, the appellee admits that the clerk was a trustee, but insists that the trust created was in the nature of a resulting trust, and that the general rule that statutes of limitation will run against trusts of this nature is applicable.

It is unnecessary for us to determine whether or not the trust was an express or resulting trust, for, if we accept the theory of the appellee, the cause of action is not barred by the operation of § 6960 of Crawford & Moses' Digest. If we assume that the statute is applicable, we conclude that the date from which it begins to run is not the date of the collection of the delinquent assessments, but the date on which the term of office expired. The appellee argues that because he should have turned over all moneys received by him as soon as collected, by failing to do so he became then a defaulter, so as to start the running of the statute. It must be remembered, however, that, while no act of concealment of the item collected was made, Seay had in his possession the records showing its collection, and, as a matter of fact, the defalcation was not actually discovered until after the expiration of his term of office, when the records were no longer in his possession. It is true that a diligent inspection of these records would have led to this discovery soon after the collection was made. Those interested, however, have a right to rely upon the integrity of public officials, and to hold that the statute of limitations would begin to run against each collection from its date instead of from the expiration of the defaulting officer's term of office would

make it difficult to hold a defaulting officer and his surety liable.

In *Skagit County* v. *American Bonding Co. of Baltimore,* 59 Wash. 1, 109 Pac. 197, a county officer defended on the ground that the items collected by him for which he was sued were barred by the operation of the statute of limitations, on the theory that when he failed to pay items collected on the date such payments should have been made the statute began to run from that date. In denying this contention, the court said: ''A county official might be guilty of numerous distinct acts of embezzlement or misappropriation of funds during his term of office, but it would be impractical to hold that the statute would run as to each wrongful act from the date of its commission, simply because it might have been then discovered by an expert examination of his books. It should rather be held that, for the purposes of the statute of limitations, all causes of action matured at the expiration of his term for defalcations during such term, without reference to the several dates on which they occurred, and that, as between the county on the one part and the delinquent officer on the other, the period of limitation would not commence to run prior to the expiration of his term.'' This case was followed and approved by the later case of *City of Hillyard* v. *Carabin,* 96 Wash. 366, 165 Pac. 381.

In *People* v. *Van Ness,* 79 Cal. 85, 21 Pac. 554, 12 Am. St. Rep. 134, following the earlier case of *People* v. *Van Ness,* 76 Cal. 121, 18 Pac. 139, it was held: ''A cause of action against an officer for retaining money accrues at the expiration of such officer's term.''

This action was begun on the 10th day of October, 1933, and within five years from the date of the expiration of Seay's term of office. Therefore the statute pleaded has no application.

The decree is reversed, and the cause remanded for further proceedings in conformity with this opinion.