E. L. BREWER ET AL v. MARLIN HAWKINS

ARKANSAS SHERIFFS' ASSOCIATION, INTERVENOR

5-4923                                    455 S. W. 2d 864

Opinion delivered June 29, 1970

[Rehearing denied August 3, 1970.]

*Richard Arnold* and *Oscar Fendler,* for appellant.

*Jack Lessenberry* and *Gordon, Gordon & Eddy,* for appellee.

W. B. PUTMAN, Special Justice. This action was filed in May of 1965 by fifteen taxpayers of Conway County, Arkansas, against the appellee, Marlin Hawkins, Sheriff and Collector of Conway County since 1951, seeking an accounting for magistrate court cash

bonds placed in his hands during the years 1955 through 1961. A demurrer to the complaint was sustained by the trial court on the theory, among others, that the complaint showed on its face that the cause was barred by limitations. On appeal this Court reversed and remanded, *Brewer* v. *Hawkins,* 241 Ark. 460, 408 S. W. 2d 492 (1966), after which the complaint was amended to seek an accounting for the years 1954 through 1966.

At the close of the plaintiffs' case in chief, the lower court ruled that the three-year statute of limitations, Ark. Stat., § 37-206, foreclosed an accounting for the years prior to 1963 and that state police tickets and daily reports which had been offered by the plaintiffs to show the amount of cash bonds posted with the Sheriff during the periods for which the Sheriff's receipt books were not available, were not admissible for that purpose.

After the presentation of the defendant's case in chief and rebuttal and surrebuttal evidence, a final decree was entered holding that appellee Hawkins had failed to account completely for the years 1963, 1964, 1965 and 1966, and a judgment was entered against Hawkins in the amount of $10,082.20. By subsequent order this amount was reduced by allowing additional credits totaling $2,188.94.

From this decree the taxpayers have appealed, assigning as error the ruling of the chancellor on the statute of limitations and his rejection as evidence of the state police tickets and daily reports. Hawkins has cross-appealed from the judgment against him, asserting that the trial judge should have sustained in its entirety his motion to dismiss filed at the end of the plaintiffs' case in chief.

It was the theory of appellee in filing his motion to dismiss as to the years barred by limitations, that appellants had failed to prove any fraud or concealment on the part of the appellee which would toll the statute of limitations, hence no accounting could be

required for the periods prior to three years before the filing of suit. With this the chancellor evidently agreed, and the motion was granted. We believe that in so doing, he committed error.

Irrespective of how it was styled, appellee's motion at the end of appellants' case in chief directed to the matter of limitations was designed to test the legal sufficiency of the evidence on that point, as provided in Ark. Stat. § 27-1729. It has long been established that in passing on a demurrer to the evidence, it is the trial court's duty to give the evidence its strongest probative force in favor of the party against whom the demurrer has been filed and to rule against that party only if his evidence, when so considered, fails to make a *prima facie* case. *Werbe* v. *Holt*, 217 Ark. 198, 229 S. W. 2d 225 (1950).

Jack Stone, a former Arkansas State Trooper, testified that while stationed in Morrilton between 1954 and 1959, he had on occasion seen the appellee, a justice of the peace who handled most of the magistrate court business in Conway County, and the justice of the peace's brother filling out the official justice of the peace transcripts (from which the County General Ledger is copied in the County Clerk's office). According to Stone, appellee would read the names of persons who had been arrested and the charges against them from his official receipt book, and the justice of the peace and his brother would enter the names on the transcript forms. However, Stone testified, the charges shown on the transcript were frequently either a single or a number of lesser offenses than those with which the person was originally charged. Likewise the amounts of money entered in the transcript would vary from the amount in the Sheriff's receipt book. Usually the fine was shown to be one dollar.

Appellants also called to the stand a number of people who testified about their actual experiences when charged in magistrate court in Conway County.

Some of these witnesses testified that they were charged with certain offenses and posted bonds of certain amounts, but an examination of the County General Ledger, pertinent volumes of which were received in evidence, revealed that the magistrate court transcript showed them to have been charged with lesser offenses and to have paid nominal fines.

Harry Frese, a certified public accountant, testified that he had made a comprehensive examination of the relevant county records and had found numerous instances in which there were substantial differences in the offenses charged and the money reported on the County General Ledger and records showing receipts by the Sheriff.

Appellee argues, however, that there could be no fraudulent concealment because the discrepancies were readily apparent from an examination of two separate county records, i. e., the County General Ledger (or justice of the peace transcripts) and the Sheriff's receipt book. Public records give constructive notice of facts stated therein, it is claimed. This argument, however, overlooks the fiduciary nature of the office of sheriff. A public office is a public trust, and funds officially received are trust funds. *Fidelity & Deposit Co.* v. *Cowan,* 184 Ark. 75, 41 S. W. 2d 748 (1931). When such a relationship of trust and confidence exists, it is the duty of the trustee to disclose the true facts and constructive knowledge of fraud is not charged to the public simply because it may be discovered by a meticulous search of public records. 54 C. J. S. *Limitation of Actions,* Sec. 189(b). See also, *Locust Creek Drainage Dist. No. 2* v. *Seay,* 190 Ark. 739, 81 S. W. 2d 835 (1935).

We hold that a prima facie case was made and that the question of fraudulent concealment was one to be determined after a hearing and weighing of all the evidence.

To prove the amount of money received by appellee as cash bonds, appellants offered in evidence the re-

ceipt books kept by appellee as Sheriff. No such receipt books could be found, however, for the period prior to December 21, 1962, and in an effort to establish the cash bonds received by the Sheriff during this time, appellants offered in evidence State Police Tickets and daily reports. Until June 30, 1957, daily reports were required to be submitted by state troopers, including the disposition of all cases in which they had made the arrest. After June 30, 1957, daily reports were discontinued, and only weekly reports were required, but with each such report were sent in copies of tickets issued by the troopers with the disposition of the cases indicated in a space provided for that purpose. The source of the information might be personal observation, the court, or the person who took the bond.

The lower court sustained appellee's objection to these tickets and daily reports, and this is assigned by appellants as error.

It is appellants' theory that in the absence of the best evidence, the receipt books, the tickets and daily reports are admissible as business records under Ark. Stat. §28-928.

The language of the Arkansas statute is the same as that of the Federal Business Records Act, 28 U. S. C. A. 1732(a), and the "Model Act" from which both were taken. In the leading case of *Hoffman* v. *Palmer,* 129 F. 2d 976 (2 Cir. 1942), affd. 318 U. S. 109, 63 S. Ct. 477, the history of this statutory exception to the hearsay rule and the reasons justifying it are thoroughly explored. The Act was designed to relieve the problems arising from the strictness of the common law rule which requires each clerk or bookkeeper involved in a transaction to be called or accounted for, thus frequently rendering inadmissible in court records upon which the mercantile and industrial world regularly relies. But the admission in evidence of business memoranda to prove the truth of their contents can be justified only if the circumstances of their making are such as to demonstrate an inherent probability of trustworthiness.

As with all exceptions to the hearsay rule, the test of admissibility is "some special greater-than-average reliability in the evidence covered by the exception . . . ." Leflar, *Theory of Evidential Admissibility—Statements Made Out of Court*, 2 Ark. L. Rev. 26, 37.

We do not believe that the tickets and reports in question were made under circumstances that create a likelihood of trustworthiness and reliability.

Appellants called six members of the Arkansas State Police to testify concerning the tickets and daily reports, five of whom had been stationed in Conway County. The sixth was the head of the Traffic Records Section. It is apparent from an examination of their testimony that virtually all of them considered the disposition section of their tickets and daily reports highly unreliable. They were only infrequently made from personal knowledge, and virtually never checked for accuracy. The disposition reports served only to gather statistical information of no interest to the state police for the benefit of other departments of state government. Not only were the troopers not motivated to accuracy, but it is apparent that deliberate falsification of the tickets and reports was not uncommon. There was testimony of incidents of state troopers copying tickets actually issued by city police or sheriff's deputies, apparently in an effort to impress their superiors with their diligence. No efforts were made by the troopers to correct misinformation resulting from the lowering or refunding of bonds, the dismissal of charges or appeal and reversal of convictions. Records so cavalierly kept and patently unreliable cannot be the basis of a charge against the accounts of any public official, and the chancellor was correct in excluding them for that purpose.

Appellee has cross-appealed from the judgment against him urging that the trial court should have granted his motion to dismiss at the end of appellants' case in chief. Appellee argues that a strong presumption exists that a public official has faithfully performed the

duties of his office which appellants did not overcome, that appellee has complied with the statutory accounting requirements and that an erroneous standard was used to determine if an accounting had been made.

Assuming that a presumption of the type described by appellee exists, its only effect was to pass to appellants the burden of going forward with evidence to the contrary. When this was done, the consequences of the presumption were avoided and the issue then became one, of fact not subject to challenge by a motion to dismiss or demurrer to the evidence. See Barnhart, *Use of Presumptions in Arkansas,* 4 Ark. L. Rev. 128.

It is true that among the Conway County records received in evidence were the official audit reports which concluded that county "accounts . . . were found in good condition . . . with all funds accounted for." The trial court held, however, that in addition to being required to meet the accounting requirements imposed by the state, the accounts of appellee, as a trustee of public funds, might be subjected to the more searching scrutiny of a technical "audit" as that term is used in the accounting profession. This ruling was correct. A public official may not insulate himself against a strict accounting for public funds entrusted to him simply because routine examination by state auditors has failed to reveal any discrepancies.

We have likewise examined the position of appellee that judgment should not have been rendered against him for the "partial payments" made on fines and costs and find it to be without merit. The money was admittedly collected by the appellee and his obligation to account for it cannot be doubted.

The decree of the lower court is reversed and remanded on appeal and affirmed on cross-appeal.

HOLT, J., disqualified.