Marion THOMAS, MARYLAND CASUALTY
COMPANY, a Corporation, and
FIDELITY & DEPOSIT COMPANY of
MARYLAND, a corporation *v.*
James. R. WILLIFORD

74-347                                              534 S.W. 2d 2

Opinion delivered February 23, 1976
[Rehearing denied April 5, 1976.]

*Skillman, Currett & Davis,* for appellants.

*Reid, Burge & Prevallet,* and *Wright, Lindsey & Jennings,* by: *David M. Powell,* for appellee.

DON M. SCHNIPPER, Special Justice. This is a taxpayers action brought by the Appellee on behalf of Crittenden Coun-

ty, Arkansas, to require Appellant, Marion Thomas, to account for and pay over certain sums of money alleged to have come into his hands while he held the office of Sheriff and Collector for said county. Appellee alleged that Appellant Thomas had wrongly and fraudulently misappropriated and converted these funds to his own use during the terms of his office, namely January 1, 1965 thru June 29, 1970. Appellants Maryland Casualty Company and Fidelity & Deposit Company of Maryland were joined in this action as Sureties on Appellant Thomas' statutory bonds.

This action was tried to the Chancellor by Assignment over a considerable period of time and the transcript of the proceedings consisted of approximately 2,500 pages. A detail outline of all allegations and specific transactions would be impractical and not necessary to this decision.

At the conclusion of the trial before the Chancellor by Assignment the Court prepared and filed its "Findings of Fact and Conclusions of Law", the net result of which was to require the Appellants to account for and pay over to Crittenden County approximately $35,000.00 plus interest and an additional $10,500.00 in attorneys' fees awarded attorneys for Appellee. From this award Appellant Thomas and Appellant Surety Companies have taken this appeal.

A number of the points for reversal relied upon by all of the Appellants revolve around the receipt by Appellant Thomas of the sum of $8,800.00 for the years 1965 through 1969 by and from Southland Racing Corporation.[1] The method of the making and receiving of these payments, according to the undisputed testimony, involved a very suspicious method including the submission of fictitious invoices, issuance of checks paying the invoices to a party other than Appellant Thomas, cashing of the checks by a uniform and law enforcement equipment supplier and the paying of the funds to Appellant Thomas in cash. The Trial Court found these funds to have been received by Appellant Thomas in a

---

[1]The undisputed evidence indicated Appellant Thomas received the sum of $1,700.10 during 1965, $1,700.00 for each of the years 1966, 1967 and 1968, and the sum of $2,000.00 during 1969.

"surreptitious manner", to have deprived the citizens of Crittenden County, Arkansas of the benefit thereof contrary to his office of public trust, and that the payments were in violation of the provisions of Article 19, Section 23 of the Arkansas Constitution and the Initiated Act No. 1 of Crittenden County, Arkansas. Having so found, the Trial Court then gave judgment against Appellants for this sum and awarded interest, penalties and attorneys' fees on this sum.

Appellant Thomas had alleged error by the Trial Court in requiring an accounting for these funds (hereinafter referred to as the Southland funds) as such were not "public funds" for which Appellant Thomas was charged. Appellant Surety Companies further urged this Court that the required accounting of the Southland funds was error as said funds were "gifts" to Appellant Thomas, for which neither he nor his Sureties should be required to account.

Article 19, Section 23 of the Arkansas Constitution reads as follows:

"Section 23. MAXIMUM OF OFFICERS' SALARIES OR FEES. - No officer of this State, nor any county, city or town, shall receive, directly or indirectly, for salary, fees and perquisites more than FIVE THOUSAND DOLLARS net profits per annum in par funds and any and all sums in excess of this amount shall be paid into the State, county, city or town Treasury as shall hereafter be directed by appropriate legislation."

Initiated Act No. 1 of Crittenden County authorized compensation of the Sheriff and Collector at $5,000.00 per annum, "and in addition thereto the actual and necessary expense of travel incident to the duties of this office, and shall receive no other fee, commissions, perquisites, or other compensation, either directly or indirectly, for services rendered as such Sheriff and Collector." The evidence strongly indicates that these funds were not paid to Appellant Thomas for any services rendered or to be rendered by him or his office and were not in any way "breakage" money or other designated funds

to which Crittenden County, Arkansas and its citizens would have been entitled to demand or receive. No person connected with Southland Racing Corporation testified and the exact purpose of such payments was never established. The only real evidence adduced at the trial to explain the payment and receipt of such funds and the interest the county might have to such was the testimony of Appellant Thomas that he "considered it to be additional remuneration to me in addition to my salary".

Appellee forcefully argues that Appellant Thomas should be charged with these funds since, regardless of the purpose of such payment, they were received "by virtue of his office". See *White* v. *Williams*, 187 Ark. 113, 59 S.W. 2d 23 (1933) and *State* v. *Harmon*, 190 Ark. 621, 80 S.W. 2d 619 (1935). Further, since such funds were received "by virtue of his office" they must be considered a "Perquisite" within the definition of Article 19, Section 23 of the Arkansas Constitution and Initiated Act No. 1 of Crittenden County. In so holding we find the Trial Court committed error.

All the cases cited by Appellee (*White* v. *Williams*, Supra., *State* v. *Harmon*, Supra., and *Brewer* v. *Hawkins*, 248 Ark. 1325, 455 S.W. 2d 864 (1970) ) involve monies which came into the hands of respective county officials from sources with which the respective counties were charged or were funds to which the respective counties were entitled. We do not find the gratuitous payments in the instant case to be analogous to fees for the feeding of prisoners, fees received for taking care of federal prisoners and cash bonds. We reaffirm the holding of each of the hereinabove cited cases. It is our finding that the Southland funds in the instant case, however, were not funds to which the county was entitled, had any interest in or could demand or file suit for collection. They were not paid for any public purpose nor to the detriment of any public obligation. They were not "Public funds" for which we believe Appellant Thomas could be charged and the receipt by him of such funds was not in violation of Article 19, Section 23 of the Arkansas Constitution or Initiated Act No. 1 of Crittenden County, Arkansas.

This Court has taken special notice of the manner in

which the Southland funds were paid to and received by Appellant Thomas. While holding these funds not to be "public funds", we in no way intend to approve of the method, legality or morality of such manner as might be the subject of a criminal prosecution. This, however, is a civil action for an accounting.

Contrary to the argument of Appellant Surety Companies, we do not hold that in a taxpayers suit for accounting it must be shown that some amount of wrongdoing in connection with the receipt of funds such as this existed. We do find, however, that there must be some interest of the county and its citizens to the funds received before a public official may be held responsible in a civil accounting action. We do not feel the proof of Appellee in the instant case was sufficient.

In reversing the Trial Court on the issue of the Southland funds we also, of necessity, must reverse on that Court's finding the Appellant Surety Companies liable for the payment of the Southland funds and in the awarding Appellee penalty and attorneys fees under Arkansas Statutes Ann., Section 66-3238. It should be noted that by this finding the amount for which the Appellant Surety Companies would be liable has been reduced below the demanded amounts as required for the awarding of such penalties and attorneys fees.

The next contention of Appellant on this appeal is that the Trial Court erred in applying the Statute of Limitations as to Appellant Thomas. Appellant Thomas argues that either Arkansas Statutes Ann., Section 37-203 or Section 37-204, both being two-year statutes, is applicable to the instant situation and not the four-year Statute of Limitation provided by Arkansas Statutes Ann., Section 37-207. Appellant further argued that there was no allegation or proof of any fraud or concealment on the part of Appellant Thomas that would toll any of the Statutes of Limitation. On this point this Court disagrees with Appellant as to all transactions except the payment and receipt of a $150.00 per month expense allowance. To the contrary the pleadings are replete with allegations of fraud, concealment and misappropriation on the part of Appellant Thomas and the proof by Appellee

more than met this burden. Accordingly, we find that the allegation and proof of fraud and concealment in the instant case was sufficient to toll any Statute of Limitation applicable under the circumstances and affirm the Trial Court in so holding.

Appellant Thomas next contends the Chancellor by Assignment erred in requiring him to account for certain funds which were the result of some 15 specific transactions and for which Appellant contended he had accounted and was entitled to credit. These transactions range from checks on Appellant's department accounts to individuals which were endorsed by the individuals and applied toward Appellant's personal obligations, to checks payable to cash, to checks in payment of allegedly fictitious law enforcement equipment supplier invoices, to a $150.00 per month expense allowance paid by the county to Appellant. This court has reviewed each of these transactions thoroughly and cannot say the Trial Court's findings on all points are against the preponderance of the evidence. Accordingly, we hereby affirm the chancellor's findings on all of the specific transactions.

While affirming the Trial Court judgment on the above unspecified transactions, we feel one such item raised by Appellant and presented to this Court on several occasions in recent years deserves discussion. According to the testimony of Appellant and other county officials, Appellant Thomas was paid $150.00 per month during the years 1965 through June 29, 1970 as an "expense" check, this payment being over and above his statutory salary and payment by the county of all travel expenses. No expense voucher or other proof of such expense was ever submitted to the county to substantiate such payment. The Trial Court found "The $10,050.00 paid to Defendant over the five-year period constituted an illegal exaction of public funds". In requiring an accounting and repayment of Appellant the Trial Court further held that the four-year Statute of Limitation of Arkansas Statutes Ann., Section 37-207 applied unless tolled by the showing of fraud or concealment on the part of the Appellant. Finding "the receipt by Defendant of the $150.00 per month allowance was open and notorious and was disclosed to the

Quorum Court each year", the Trial Court further held that the four-year Statute of Limitation began to run each year from the filing of Appellant's account and therefore only required Appellant to account for such expense payments for the years 1968, 1969 and 1970 in the amount of $4,650.00.

This Court has been faced with this proposition and situation a number of times. On each of these occasions we have upheld the validity of monthly or annual expense allowances for public officials provided such payments are reimbursement for actual, reasonable and necsssary expenses incurred in performing duties directly connected with, and incidental to, their official duties and proof of such expenses by way of vouchers or itemized statements is produced. The payment of the maximum authorized monthly or annual amounts without such proof by each official has been held to be an illegal exaction of public monies and a violation of the constitutional provision relating to the particular offic ial. See *Berry* v. *Gordon*, 237 Ark. 547, 376 S.W. 2d 279 (1964); *Laman* v. *Smith*, 252 Ark. 290, 478 S.W. 2d 741 (1972); *Tedford et al* v. *Mears & Scott*, 258 Ark. 450 (1975). We hereby reaffirm our holdings from our previous reviews.

In the instant case the evidence is clear Appellant Thomas was receiving the $150.00 per month expense funds without the required proof of such expenses. This constituted an "illegal exaction" and the Trial Court correctly required Appellant Thomas to account for and repay all sums received and not barred by the four-year Statute of Limitation. Furthermore, the record fails to disclose any evidence of fraud or concealment on the part of Appellant Thomas in accepting the monthly expense allowances. We therefore find no evidence on which the Statute of Limitation could be said to have been tolled. The finding of the Trial Court on this contention of Appellant is, therefore, affirmed.

The Trial Court further charged Appellant a 5% per month penalty on 29 of the 43 specific items or transactions presented at the trial, specifically *excluding* several items the Court found Appellant to have accounted for, the $150.00 per month expense allowances for years excluded by the four-year Statute of Limitations and the repayment of the

362

Southland funds.

The Trial Court's requirement for the payment of such penalty was under authority of Arkansas Statutes Ann., Section 84-1416 which provides as follows:

> Every collector of the county revenue, having made settlement according to law, of the county revenue received and collected by him, shall pay the amount found due from him into the county treasury, and the treasurer shall give duplicate receipts therefore; one of which shall be filed by the collector in the office of the clerk of the county court.

> Every collector or sheriff who shall fail to make payment of the amount due from him on settlement, in the time and manner prescribed in the preceeding section, shall forfeit and pay to the county, the sum of 5 per centum (5%) per month on the sum wrongfully withheld, to be computed from the time the payment ought to have been made, until actual payment, which may be recovered, by suit on his official bond.

Appellant contends that the only funds on which he could be charged such a penalty would be taxes, fines or any monies collected for any purpose by law and belonging to the county. Appellant cites this Court to Arkansas Statutes Ann., Section 84-1401 to support his argument. Under the facts in this case we find the charge of the 5% penalty by the Trial Court to have been proper and that the specific items for which Appellant was charged are within the scope of the statute.

The judgment of the Trial Court is reversed in accordance with the findings herein and the cause remanded for Judgment consistent with this opinion.

FOGLEMAN, J. and HOLT, J., not participating.

JONES, J., concurs.

ROY, J. and Special Associate Justice J. L. HENDREN, dissent.

J. FRED JONES, Justice, concurring. I concur in the results reached by the majority in this case. Article 19, § 23, reads as follows:

"No officer of this State, nor any county, city or town, shall receive, directly or indirectly, for salary, fees and perquisites more than five thousand dollars net profits per annum in par funds, and any and all sums in excess of this amount shall be paid into the State, county, city or town treasury as shall hereafter be directed by appropriate legislation."

When Article 19 was adopted most, if not all, sheriffs and collectors were on a "fee basis." They deducted their salaries from the fees they collected and paid the excess over to the county treasurers. In § 23 "perquisites" is in the same category as "salary" and "fees."

Perhaps by *dictionary definition*, "perquisites" could include any and all amounts received over and above fixed income regardless of the nature and source of such amounts, but certainly it is my view that § 23 did not contemplate "perquisites" in the form of bribes, or illegal exactions.

I am not saying, or even insinuating, that the evidence of record in this civil action indicates the money here involved was obtained through bribes or illegal exactions; I *am* saying, however, that the manner in which it was paid by Southland and received by Thomas, negates the contention that it was "perquisites" Thomas should have taken, or that he or the county should be permitted to keep, or that his bondsman should be liable for in a civil action.

It is true appellant Thomas testified that he considered the amounts he received from Southland Racing Corporation as additional remuneration for services he performed in his official capacity, but it must be remembered that Thomas and also his *bonding company* were being sued for an accounting.

If the amounts paid Thomas by Southland were for extra deputies in directing traffic and policing the dog races,

perhaps we would have a different situation than is presented on this appeal. But in that event, one would expect the payment to be made direct. There is no evidence as to whether the payments were made to enforce the law or to not enforce it.

To require an accounting and payment to the county of the funds here involved on the silent record as to why the funds were paid to Thomas in the first place, would, in my opinion, open the door to approving a county entitlement to funds coming into the hands of a sheriff while elected to office regardless of where the funds came from or how the sheriff obtained them.

If a sheriff or other officer mentioned in Article 19, § 23, could be forced in a civil action to account and pay over to the county money he should obtain through bribery or other unlawful means, it would only follow that such officer should account and pay over such funds without being forced by civil action. Such procedure could, of course, swell a public treasury with illgotten gains and result in an intolerable situation not contemplated or covered by Article 19, § 23.

It is entirely possible from the record before us that neither Southland nor Thomas had any criminal intent or ulterior motive in paying and receiving the money here involved; but the devious method by which the payments were made indicates that Southland and Thomas knew the money should not have been paid or received, and indicates that it should not be passed on to the county treasury as "perquisites" under Article 19, § 23, of the Constitution.

For the reasons stated I concur in the majority opinion.

J. L. HENDREN, Special Justice, dissenting. I respectfully dissent to that portion of the majority opinion reversing the decree of the Chancellor on Exchange (hereinafter referred to as Chancellor) with respect to the following points relied upon on this appeal by appellant, Sheriff Marion Thomas (hereinafter referred to as Sheriff Thomas) and his sureties, Fidelity & Deposit Company of Maryland and Maryland

Casualty Company (hereinafter collectively referred to as sureties), who are also appellants herein.

Appellant Sheriff Thomas' Point II:

THAT THE COURT ERRED IN FINDING THAT FUNDS RECEIVED BY APPELLANT FROM SOUTHLAND GREYHOUND TRACK WERE PUBLIC FUNDS, IN VIOLATION OF THE CONSTITUTION OF THE STATE OF ARKANSAS AND INITIATED ACT NO. 1 OF CRITTENDEN COUNTY.

Appellant sureties' Point II:

THE COURT ERRED IN ITS FINDING THAT THE SOUTHLAND FUNDS WERE RECEIVED BY APPELLANT, MARION THOMAS, IN AN OFFICIAL CAPACITY, AS EITHER PAYMENTS DUE THE COUNTY OR EXTRA COMPENSATION AS SHERIFF, SINCE THE PREPONDERANCE OF THE EVIDENCE ESTABLISHED THAT THE SOUTHLAND FUNDS WERE GIFTS TO THE APPELLANT, MARION THOMAS, FOR WHICH NEITHER HE NOR HIS SURETIES WERE ACCOUNTABLE TO THE APPELLEE.

Appellant sureties' Point III:

REGARDLESS OF THE NATURE OF THE SOUTHLAND FUNDS OR OF THE RECEIPT THEREOF BY THE APPELLANT, MARION THOMAS, THE APPELLANT, SURETY COMPANIES, WERE NOT LIABLE TO THE APPELLEE, THEREFORE, AS A MATTER OF LAW.

Appellant sureties' Point IV:

THE COURT ERRED IN AWARDING PENALTY AND ATTORNEYS' FEE UNDER ARK.

STAT. ANN., SECTION 66-3238 AGAINST APPELLANT, SURETY COMPANIES.

The above points have to do with the receipt by Sheriff Thomas, during the years 1965 through 1969, of the total sum of $8,800.10 from Southland Racing Corporation (hereinafter referred to as Southland). The Chancellor held that these Southland funds were received by Sheriff Thomas by virtue of his status as Sheriff; that the funds were, therefore, a "perquisite" within the meaning of Article XIX, Section 23 of the Arkansas Constitution; that without considering the Southland funds, Sheriff Thomas received the $5,000.00 per year compensation permitted him under Article XIX, Section 23; that the receipt by Sheriff Thomas of the Southland funds under the circumstances shown, constitutes a violation of Article XIX, Section 23; that Sheriff Thomas and his sureties must account for and pay over to Crittenden County the Southland funds pursuant to Article XIX, Section 23; and that the sureties are both liable for 12% penalties and attorneys' fees under Ark. Stat. Ann., Section 66-3238 since, when the Southland funds are added to other funds required by the decree to be paid to the county, the respective exposures of the sureties on their bonds are reached and exceeded.

The majority finds that the Chancellor erred in holding that the Southland funds in question were received by Sheriff Thomas "by virtue of his office" and since they were so received, they must be considered a "perquisite" within the definition of that term in Article XIX, Section 23 of the Constitution. The majority further expressed the view that the Southland funds were not funds to which the county was entitled; had any interest in or could demand or file suit for collection; that they were not paid for any public purpose, nor to the detriment of any public obligation; they were not "public funds" for which Sheriff Thomas could be charged; and the receipt of same by Sheriff Thomas was not in violation of Article XIX, Section 23 of the Constitution. In so holding, the majority comments that it is not thereby approving the method, legality or morality of the "manner" of Sheriff Thomas' receipt of the Southland funds since this is a civil accounting action and not a criminal prosecution.

Unlike the majority, I find no merit in any of the above-stated points for reversal relied upon by appellants and I am unable to agree with the foregoing views of the majority and the reasoning supporting the said views.

The points for reversal hereinabove mentioned, raise two basic issues:

(1) Were the Southland funds received by Sheriff Thomas by virtue of his being the incumbent in the office of Sheriff of Crittenden County?

(2) Where a public official receives from the public, in public funds, the $5,000.00 per year maximum compensation permitted him under Article XIX, Section 23 of the Arkansas Constitution, does this constitutional provision prohibit his receipt, at the same time, of secret private contributions made directly or indirectly to him, without the knowledge and consent of the public he serves?

In order to discuss the issues hereinabove set out, it is necessary to review the testimony and evidence in the record concerning the Southland funds and their receipt by Sheriff Thomas.

It was not disputed at trial and the proof clearly shows that during the years in question, Sheriff Thomas received from Crittenden County $5,000.00 per year, together with reimbursement for actual expenses incurred by him in connection with the discharge of his office as Sheriff of Crittenden County. Further, there was no dispute at trial and the proof clearly shows, that Sheriff Thomas received from Southland the sum of $1,700.10 during 1965; $1,700.00 for each of the years 1966, 1967, and 1968; and the sum of $2,000.00 during 1969, for a total of $8,800.10. Sheriff Thomas and his sureties concede these facts on this appeal.

The only testimony concerning the manner in which Sheriff Thomas received the $8,800.10 from Southland came from Charles Ralph York, the President of Farrior's, Inc., of Little Rock (a uniform and law enforcement equipment

supplier), and from Sheriff Thomas himself.

York testified that he received the payments from Southland hereinabove mentioned by way of checks issued by Southland to Farrior's for the alleged purpose of paying fictitious invoices, which were, either before or after the issuance of the checks, sent to Southland by Farrior's for various items of uniform clothing, which items never were, in fact, shipped at all. York further testified that he cashed the checks and delivered the funds therefrom over to Sheriff Thomas.

Sheriff Thomas admitted York told him Southland would send York checks, which York would then cash and deliver to him, since the checks were sent to York for the Sheriff. Sheriff Thomas denied knowing about this until he was approached concerning it by York. Sheriff Thomas also denied having anything to do with the preparation of the invoices sent by Farrior's to Southland, but acknowledged receipt of the funds from Southland by way of York and reporting them as income. Sheriff Thomas further testified he presumed he received the money because he held the office of Sheriff, but that the funds were not paid from public funds since the source of the money was Southland. Sheriff Thomas stated he considered the funds additional remuneration in addition to his salary, but maintained the funds were not from Crittenden County and were not public funds and he saw no reason why there was anything illegal about them. Sheriff Thomas further stated that Southland was not obligated to give the money to him and he accepted it because it wasn't public funds and they wanted to give it to him, as they had other Sheriffs.

The Chancellor sustained appellee's objection to a line of cross-examination apparently designed to draw out testimony that persons holding the office of Sheriff of Crittenden County prior to the incumbency of Sheriff Thomas, had received such funds from Southland. On appeal, the sureties claim error in this ruling and urge that, had the testimony been received, the evidence would have shown that York had been a conduit for Southland funds in the past and that the payments had no official purpose, but

were rather gifts to an incumbent Sheriff.

The Chancellor, having heard the testimony and observed the demeanor of both Charles Ralph York and Sheriff Marion Thomas, concluded that a preponderance of the evidence shows that the Southland funds had been received by Sheriff Thomas by virtue of his status as the Sheriff of Crittenden County and that he would not have received the funds had he not been the incumbent Sheriff. The Chancellor went on to say that since the Southland funds had come into Sheriff Thomas' possession by reason of his function as Sheriff, the funds were public funds for which he must account as trustee, citing *Brewer v. Hawkins*, 248 Ark. 1325, 455 S.W. 2d 864 (1970).

This Court has repeatedly held that we determine equity cases de novo, upon the record made in the Court below, but reverse only those cases where the Chancellor has found or decreed contrary to a preponderance of the testimony. *White v. Williams et al*, 192 Ark. 41, 89 S.W. 2d 27 (1936), and cases cited therein.

In the instant case, the allegations, and proof offered in support of same, are quite complicated and detailed, and numerous witnesses were heard by the Chancellor over a period of several months. The transcript of the trial proceedings consists of approximately 2,500 pages. The "Findings of Fact and Conclusions of Law" entered by the Chancellor are lengthy and detailed, reflecting meticulous and intensive analysis of the exhibits and testimony offered at trial. This, then, is a case in which the decision of the Chancellor should be given particular regard consistent with the foregoing principles followed by the Court.

A review of this lengthy record convinces the writer that the preponderance of the evidence received, and, indeed the evidence properly rejected by the Chancellor (concerning which rejection the sureties now complain) supports the Chancellor's finding that the Southland funds were received by Sheriff Thomas by virtue of his status as Sheriff of Crittenden County and that he would not have received them had he not been the incumbent Sheriff. Accordingly, I am un-

able to agree with the majority's view on the first issue hereinabove mentioned.

Turning to the second issue, I preface my discussion by stating three basic premises which I believe to be clearly established by a preponderance of evidence in the record: (1) During the years in question, Sheriff Thomas received the $5,000.00 per year maximum compensation permitted him under Article XIX, Section 23 of the Arkansas Constitution and the enabling legislation therefor; (2) During the years in question, Sheriff Thomas also received a total of $8,800.10 (the Southland funds) in a suspicious and surreptitious manner, which funds did not come into his hands pursuant to any valid law and which funds were received by him without the knowledge and consent of Crittenden County; and (3) Sheriff Thomas received the Southland funds by virtue of his status as Sheriff of Crittenden County and the same, therefore, constituted a "perquisite" under Article XIX, Section 23 of the Arkansas Constitution.

All parties to this appeal agree (and indeed it was never urged by appellee to the contrary below) that the Southland funds were not "public funds" in the sense that the state, or a sub-division thereof, paid them to Sheriff Thomas or in the sense that they  me into Sheriff Thomas' hands pursuant to valid laws. As  ove-pointed out, a preponderance of the evidence shows that Sheriff Thomas received the Southland funds under color of his office and by virtue of his status as the incumbent Sheriff of Crittenden County, Arkansas. I think, therefore, that the Southland funds *were* "public funds" in the sense that their receipt by Sheriff Thomas by virtue of his office constituted their receipt by the public which he was then serving, to-wit: Crittenden County, Arkansas. This follows because a public office is a public trust and funds received by the holder of a public office by virtue of his status as the incumbent in that office are trust funds not received by him as an individual, but received by him as a trustee. *Fidelity & Deposit Co.* v. *Cowan,* 184 Ark. 75, 41 S.W. 2d 748 (1931); *Brewer* v. *Hawkins,* 248 Ark. 1325, 455 S.W. 2d 864 (1970). Further, this trustee relationship extends not only to "public funds" which are properly received by the holder of a public office, but also to funds received under color of

public office which are not "public funds" in the sense that the trustee had no legal right to collect or receive them and his principal likewise had no legal right to collect or receive them. *Parker* v. *Laws*, 249 Ark. 632, 460 S.W. 2d 337 (1970).

The *Parker* case was a taxpayer's suit to require a Deputy Prosecuting Attorney to account for alleged illegal court fees received by him. In *Parker* the Court quoted with approval from *Yuma County* v. *Wisener*, 45 Ariz. 475, 46 P. 2d 115 (1935), as follows at page 638 of 249 Ark., at page 340 of 460 S.W. 2d:

> ". . . It is the usual rule that where a public officer obtains money under color of office, which he had no legal right to collect, that he is not permitted in a suit to recover such sums, either from himself or his bondsmen, to contend that the state has no right to recover the money from him because it had not authorized him to collect it from the citizens whom he had deceived in regard to the law. (citing cases from other jurisdictions)."

In the case before us, Sheriff Thomas has contended and the majority has held, that since the Southland funds were not funds to which the county was entitled, had any interest in or could demand or file suit for collection, Sheriff Thomas cannot be charged with them (as being "public funds" for which he must account) and his receipt of same was not in violation of Article XIX, Section 23 of the Constitution. No authority is cited in support of this holding. In rejecting the sureties' argument that in a taxpayer's suit for an accounting, it must be shown that some amount of wrongdoing existed in connection with the receipt of funds such as the Southland funds, the majority finds that there must be some interest of the county and its citizens in the funds received before a public official may be held responsible in a civil accounting action and that, in the instant case, the proof of Appellee was insufficient. No authority is cited in support of this holding.

In my view, both these holdings of the majority are contrary to the decision in *Parker* v. *Laws*, supra. There, the funds sought to be recovered by the taxpayer were not funds to which the county was entitled, had any interest in or could

demand or file suit for collection. The funds were illegal Court fees belonging to private individuals, yet this Court permitted the suit against a public officer requiring him to account for same and, on remand, ordered the funds in question held in the registry of the Chancery Court for a reasonable time so that the private persons to whom they belonged could claim them. In so directing, the writer of the *Parker* opinion expressed the concern that if the funds were simply ordered paid over to the county, they might be expended for county purposes within the fiscal year before the claimants to same could effectively assert their rights, and proceeded to state, at page 638 of 249 Ark.:

> "To avoid that possible injustice, we direct that the sums be retained in the registry of the Chancery Court, as in the case of a bill of interpleader, until the rightful owners have had a reasonable notice and an opportunity to assert their claims. Any unclaimed balance will then be paid over to the county. In utilizing the equitable principles of interpleader, we are merely following the settled rule by which a court of Chancery devises a remedy to fit the need. *Renn* v. *Renn,* 207 Ark. 147, 179 S.W. 2d 657 (1944)."

I am unable to reconcile the majority's holding in this case with the holding in *Parker* v. *Laws, supra.* In my opinion, the *Parker* case is ample authority for requiring Sheriff Thomas to account for the Southland funds. Further, I believe the procedure outlined by the Court in the *Parker* case is appropriate here. The Southland funds should be paid into the registry of the Crittenden County Chancery Court, as in the case of a bill of interpleader, until Southland Racing Corporation and Farrior's, Inc., the source and conduit of the funds, respectively, have each had a reasonable notice and opportunity to assert any claim they may have to the same. If no such claim or claims are asserted, the balance should then be paid over to the County.

It is unnecessary to this decision to determine, with finality, what should be done with the Southland funds. The point is: Since Sheriff Thomas admittedly received the $5,-000.00 per year maximum compensation permitted him un-

der Article XIX, Section 23 of the Constitution during the years in question, it is enough to hold that he cannot keep the Southland funds which were received in addition to his legally permitted compensation, and he must pay the said funds over to the proper authorities. See *State ex rel. Poinsett County* v. *Landers*, 183 Ark. 1138, 40 S.W. 2d 432 (1911).

Second, even if it be held that the Southland funds were not "public funds", the receipt and retention of same by Sheriff Thomas constitutes a violation of the clear wording and intent of said Article XIX, Section 23 which constitutional provision reads as follows:

"Section 23. MAXIMUM OF OFFICERS' SALARIES OR FEES — No officer of this State, nor any county, city or town shall receive, directly or indirectly, for salary, fees and perquisites more than FIVE THOUSAND DOLLARS net profit per annum in par funds and any and all sums in excess of this amount shall be paid into the state, county, city or town treasurer as shall hereafter be directed by appropriate legislation."

This constitutional provision purports to limit what compensation a public officer may *receive* and specifically states that the limit applies to "net profit per annum in par funds" whether received "directly or indirectly" and whether received for "salary, fees . . (or) . . perquisites". The authors did not choose to specifically state that the limit applied only to "public funds" and I find no authority (and none is cited by the majority) justifying the majority's view that the limit applies only to "public funds".

The only cases discussed by the majority relative to their decision on the Southland funds were those cases cited by the appellee. Admittedly, these cases *do* involve "public funds" sought to be retained by a Sheriff in addition to the $5,000.00 per year permitted him by Article XIX, Section 23 of the Constitution. (*White* v. *Williams*, 187 Ark. 113, 59 S.W. 2d 23 (1933) ) involved fees authorized by Act 81 of the General Assembly of 1931 for the feeding of prisoners in the county jail; *State* v. *Harmon*, 190 Ark. 621, 80 S.W. 2d 619 (1935) in-

volved fees for motor vehicle licenses authorized to be collected by the Sheriff under Act 65 of the General Assembly of 1929 and fees paid by the federal government to the Sheriff for feeding federal prisoners in the county jail; *Brewer* v. *Hawkins,* 248 Ark. 1325, 455 S.W. 2d 864 (1970) involved cash bonds posted by defendants in accordance with law, to insure their appearance before magistrate court). However, I do not read these decisions as holding that the limitations of Article XIX, Section 23 apply to only "public funds". To the contrary, in *White* v. *Williams,* 187 Ark. 113, 59 S.W. 2d 23 (1933) this Court indicated that the limitations of Article XIX, Section 23 applied to fees and perquisites received, directly or indirectly, from *any* source. There the Court decided that any profits made by a Sheriff on amounts received for feeding prisoners in the county jail would be an emolument or perquisite of office as such amounts would be received by the individual holding office by virtue of same and that in determining his total amount of salary under the Constitution, account had to be taken of all fees and perquisites directly received by the Sheriff as the incumbent in the office. In rejecting Sheriff Williams' contention that there was a distinction between the expense of feeding federal prisoners and county prisoners since the former was a matter solely between the United States Government and the Sheriff personally, this Court, speaking through Justice Butler, stated on Page 118 of 187 Ark., on page 25 of 59 S.W. 2d:

> "This is not true, however, for the sums received by him from the government were received because he was a county officer and by virtue of his office. These sums, therefore, stood on no different footing from the fees received from any other source because appellee is required to account for all fees and perquisites received either directly or indirectly."

The foregoing language by Mr. Justice Butler makes it abundantly clear that a Sheriff is required to account for all fees and perquisites received from *any* source, either directly or indirectly, and this requirement is not limited to those fees and perquisites which might be characterized as "public funds" because of the identity of the giver. The precise issue now under consideration appears to be one of first impression

before this Court and no case has been found directly controlling it.

As was said in *Berry* v. *Gordon*, 237 Ark. 547, 376 S.W. 2d 279 (1964), it is a rule of universal application that the Constitution must be considered as a whole, and that, to get at the meaning of any part of it, we must read it in light of other provisions relating to the same subject. Further, the Constitution is to be construed according to the sense of the terms used and the intention of its authors. With these principles in mind, it is instructive to consider the provisions of Article XVI, Section 4 of the Arkansas Constitution in our effort to determine if the authors of Article XIX, Section 23 intended the limitations therein expressed to apply only to "public funds". Article XVI, Section 4 reads:

> "Section 4. THE SALARIES AND FEES OF STATE OFFICERS — The General Assembly shall fix the salaries and fees of all officers in the state, and no greater salary or fee than that fixed by law shall be paid to any officer, employee or other person, or at any rate other than par value; and the number and salaries of the clerks and employees of the different departments of the state shall be fixed by law."

I think it obvious that the salaries and fees which the General Assembly is authorized to fix under Article XVI, Section 4, are to be paid by the State, or its subdivisions, in "public funds" since these public entities have no other kind of funds. It is further obvious that the General Assembly, in fixing such salaries and fees pursuant to Article XVI, Section 4, must observe the limitations set forth in Article XIX, Section 23 as to the maximum compensation an officer of the state may receive per year.

It should be noted that Article XIX, Section 23 places a limit on "perquisites" which a state officer may receive, but Article XVI, Section 4 doesn't authorize the General Assembly to fix or limit "perquisites". The omission of the term "perquisite" from Article XVI, Section 4 would not seem to have been inadvertent, but rather seems to have been conscious and deliberate in view of the meaning of the term

"perquisite". *Webster's Seventh New Collegiate Dictionary* (1965) defines "perquisite" as "a privilege, gain, or profit incidental to regular salary or wages" and as a "gratuity, tip". *Doubleday Dictionary* (1975) defines "perquisite" as "any incidental profit from service beyond salary or wages".

These definitions make it clear that a "perquisite" is no part of salary, but rather is a privilege, gain, profit, gratuity or tip *incidental to* and *beyond* regular salary or wages. Since Article XVI, Section 4 only authorizes the General Assembly to fix salaries and fees to be paid state officers by the public out of public funds and prohibits such officers from receiving greater salary or fees than that fixed by law, from whence can come the "perquisites" mentioned in Article XIX, Section 23 and in what manner can they be paid if not in "public funds"? It would seem obvious from the foregoing discussion that the authors of the Constitution did not intend that "perquisites" should be considered to be a part of a state officer's compensation coming from the public generally and paid by or received out of public funds. Further, when Article XVI, Section 4 and Article XIX, Section 23 are considered together, one is impelled to the inescapable conclusions that Article XVI, Section 4 relates to the compensation paid to a state officer in public funds from the state or its subdivisions and that Article XIX, Section 23 both limits the amount of public funds which may be used to compensate a state officer under Article XVI, Section 4 as well as the "perquisites" which may be received by a state officer from *any source,* public or private.

In a previous consideration of these constitutional provisions limiting the compensation which may be received by state officers, this Court has pointedly stated its opinion of what the authors of the present constitution intended by Article XVI, Section 4, and Article XIX, Section 23. Speaking through Justice Wood, this Court said in *Nixon v. Allen,* 150 Ark. 244, 234 S.W. 45 (1921), at Page 258 of 150 Ark.:

"... Article XVI, Section 4, together with Article XIX, Section 23, were intended by the framers of our organic law to forestall, if possible, any extortion, extravagance, or corruption on the part of those entrusted with the ad-

ministration of public office . . . "

I am not persuaded that the efforts of the authors of the Constitution to forestall, if possible, any extortion, extravagance, or corruption on the part of those entrusted with the administration of public office, were prompted solely by a concern that those in public office might perpetrate those evils by paying out public funds to, or permitting public funds to be retained by, others in public office over and above the expressed constitutional limits. If one in public office should engage in extortion, extravagance, or corruption, would his victims be others who hold public office or would his victims be the public he serves? If these constitutional provisions do not protect the public from one in public office who would extort private funds from them to augment his salary or who would be corrupted by the receipt of secret private contributions in augmentation of the salary paid him by the public, where then, in the Constitution, is the public's protection from these evils to be found?

In my opinion, the authors of the Constitution intended Article XIX, Section 23, in addition to its more obvious purposes, to prohibit precisely the kind of secret private contributions to state officers such as are involved in this case even where, as here, there is no actual evidence of extortion or corruption. Even in the absence of such evidence, when secret private contributions are made to a Sheriff in a suspicious and surreptitious manner without the knowledge and consent of the county and the people therein the Sheriff serves, the result is the opportunity for and the appearance of the very evils warned of in *Nixon* v. *Allen*, supra.

In a search for some authority supporting the majority's view on the second issue now under discussion (other than cases cited in the majority opinion which are, in my mind, not inconsistent with, if not supportive of, the writer's viewpoint), the case of *Gipson* v. *Ingram*, 215 Ark. 812, 233 S.W. 2d 595 (1949) was found. In that case there is included some dicta which might provide some comfort for one holding the majority's view. In the *Gipson* case, this Court held that when the legislature fixes a maximum annual salary of an employee, then no state agency or institution may use any

part of its cash funds to supplement or enlarge the salary so fixed by the legislature. The Court went on to state, at Page 821 of 215 Ark.:

"In this connection, we point out that some employees, for example, see Section 17-517, Ark. Stat. of 1947, receive additional compensation derived from federal as well as county sources, and some also from endowments or gifts. The legislative determination in the appropriation act of a maximum annual salary does not prohibit such supplementation from funds from such other sources, as these are not "cash funds" within the purview of this topic. No injunction should prohibit the supplementation of salaries by the use of funds given for salary purposes by sources not controlled by the legislature, such as private donations and federal grants. Of course, the agencies and institutions may accept donations earmarked for salaries, even though they may not use general cash funds to increase the salaries fixed by the legislature."

There are at least two reasons why the above language in the *Gipson* decision cannot be regarded as supporting the view that a Sheriff, who is a state constitutional officer, may have his salary supplemented by funds given for salary purposes by sources not controlled by the legislature, such as endowments, gifts, or donations. First, this dicta related to *employees* and not to *state officers*. In *Bean* v. *Humphrey,* 223 Ark. 118, 264 S.W. 2d 607 (1954), this Court held that, with respect to the salary limitations of Article XIX, Section 23 of the Constitution, there are key distinctions between those who are *employees* and those who are *officers* and that the said limitations do not apply to employees, but only to state officers.

Second, the said language indicates that the supplementation of an employee's salary, there said to be permissible and not in violation of an act fixing the maximum of set salary, could be accomplished by the *employer* of the employee, using endowments, gifts and donations which were given *to the employer* and earmarked for salaries. In the case at bar, the Southland funds were not given to Crittenden County and earmarked as additional salary for Sheriff Thomas. To

the contrary, the funds were secretly and surreptitiously given to Sheriff Thomas without the knowledge and consent of Crittenden County. Accordingly, I find the *Gipson* dicta not to be supportive of the majority view and regard it as very little comfort for the same.

In my view, there is a further reason why the Southland funds should have been accounted for and paid over to Crittenden County by Sheriff Marion Thomas. This Court has previously held that the office of Sheriff is a public trust. *Brewer* v. *Hawkins*, supra. It is clear beyond the need for citation of authority that the holder of a public trust owes to the public complete and total disclosure of any fact or circumstance which might have a bearing on his ability and intention to faithfully and impartially discharge his duty. The receipt by an incumbent Sheriff of funds given to him by a private corporation in a suspicious and surreptitious manner as is disclosed by the facts in this case, is a fact which the citizens of Crittenden County are entitled to know as the beneficiaries of the public trust reposed in the office of Sheriff.

I further dissent to this Court's failure to address itself to appellee's contention that the decree of the Chancellor should be affirmed by reason of the failure of appellant to comply with Rule 9 of this Supreme Court in the preparation of the briefs submitted herein. I think the contention is well-taken and that this appeal could have been disposed of on that ground had not the important issue concerning the meaning and effect of Article XIX, Section 23 of the Arkansas Constitution been involved. Since I would affirm the decree of the Chancellor on the merits, I deem it unnecessary to extend this dissenting opinion further by discussing the deficiencies in the briefs submitted by appellants. However, I would award additional attorneys' fees to Appellee by reason of this appeal in view of the unnecessary extra time and effort required by reason of the said deficiencies.

I would affirm the decree of the Chancellor, rejecting all points urged for reversal by appellants, and would supplement the decree by directing that the Southland funds in the amount of $8,800.10 should be paid into the registry of the Crittenden County Chancery Court, as in the case of a bill of

interpleader, until Southland Racing Corporation and Farrior's, Inc., the source and conduit of the funds, respectively, have each had a reasonable notice and opportunity to assert any claim they may have to the same. The Clerk of the Chancery Court of Crittenden County should be directed to give the said notice to Southland Racing Corporation and Farrior's, Inc. by certified mail. If no claim or claims are asserted to the funds within a reasonable time after receipt of the said notice by the parties to whom the same is directed, the said funds should then be paid over to Crittenden County.

I am authorized to state that Justice Roy joins in this dissent.